ALDACE F. WALKER AND JOHN J. McCOOK, *as Receivers of the Atchison, Topeka & Santa Fe Railroad Company,* v. L. G. SCOTT.

No. 425.*   (61 Pac. 1091.)

1. NEGLIGENCE—*Assumption of Risk—Questions for Jury.* Notwithstanding his own expressed fears that the walls of the trench in which he was working as an employee of the receivers of a railroad company might fall and do him bodily injury, the plaintiff, a man of very limited experience in that kind of work, continued in the employment, relying upon the assurance of the foreman in charge of the work that the same was entirely safe. *Held,* that all questions as to the defendant's negligence and as to the plaintiff's assumption of the risks of the employment were for determination by the jury.

2. EVIDENCE—*Expert Testimony.* Where the testimony of a witness showed him to be an expert in the matter concerning which he gave his opinion, *held,* that his testimony was properly received as that of an expert, although he, for some unexplained reason, disclaimed being such.

Error from Osage district court; WM. THOMSON, judge. Opinion filed July 25, 1900. Affirmed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*Pleasant & Pleasant, J. W. Deford,* and *W. A. Deford,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. : L. G. Scott, while an employee of the receivers of the Atchison, Topeka & Santa Fe Railroad Company, was injured by the caving in of an embankment of earth. He was at work in a deep trench which extended along the base of an embankment and between it and the Marais des Cygnes

*Reversed by the supreme court April 6, 1901. See 63 Kan. —, 64 Pac. 615.—REP.

river.    The trench was being dug and then filled with stones, to protect the embankment against erosion by the river.    On the top of the embankment, and a few feet from its edge, was the railroad operated by the receivers.    No precautions had been taken to prevent the bank, which was almost perpendicular, from falling.    Scott had worked there about fourteen days prior to the date of his injury.    The petition alleged that the plaintiff was not familiar with that kind of work ; that the foreman in charge thereof was a man of long experience therein, and possessed expert knowledge and skill respecting the same ; that no shores or props were used by the defendants or their foreman, at any time while the said work was in progress, to support the steep and dangerous bank and to prevent the same from falling ; that at divers times, but particularly on the 8th and 9th days of October, 1895, the plaintiff called the attention of the said foreman to the condition of the embankment, and expressed "his fear and apprehension that said bank was dangerous, and might at any minute fall on the men at work below" ; but that the foreman repeatedly, and particularly on the last-named day, assured the plaintiff that the bank was perfectly safe, and thereupon ordered the plaintiff to go into the trench to work therein, which order the plaintiff promptly obeyed, relying entirely upon the superior knowledge, skill, and experience, and the assurance aforesaid, of the said foreman.

The principal defenses stated in the answer were that the risks, if any, incident to the employment were assumed with knowledge thereof by the plaintiff, and that his injury resulted from his own negligence. The evidence on behalf of the plaintiff, and particularly his own testimony, tended to prove the substan-

tial allegations of the petition.   It appears that the plaintiff at different times expressed his fear that the bank might cave in, and that on the evening preceding the actual fall of a portion of the bank, which caused the plaintiff's injury, and which happened at a point about twelve feet from the east end of the excavation, the plaintiff had "bet the beer" with Bogardus, the foreman, that the bank would cave in that night.   The following morning Bogardus came, while the men were pumping out the water which had gathered in the trench during the night, and he claimed that he had won the bet, as the bank had not fallen.   Shortly after his arrival Bogardus said to the plaintiff and another man who worked with the plaintiff in the trench: "Get ready for the mud, boys"— meaning that they should put on their water-proof boots and go into the trench.   They did so, and had barely begun work when the bank fell, causing severe and perhaps permanent injuries to the plaintiff.   The point at which it fell was within a few feet of the place indicated by the plaintiff in speaking of the anticipated fall at the time the bet was made.   Before going into the trench that morning the plaintiff remarked that he "rather dreaded that place," and he stated in his testimony that he "rather felt a little afraid of it yet."   There was testimony that, to the plaintiff's expression of his fear, Bogardus responded, "Scott, you are foolish or out of your head."   The plaintiff also testified that at another time Bogardus assured him the bank was solid and safe.

On cross-examination, the plaintiff testified that he had had some experience in quarrying and laying stone and work of that kind, but which did not require excavating below the depth of two feet; that he had dug one well and assisted in digging others, the

deepest of which was not over twenty-five feet, and which were dug in Franklin county, where the soil was of about the same character as that in which the trench was being made; that he had mined coal in Franklin county in drift work at a depth from fifteen to fifty feet below the surface, the exact depth not being stated; that he was a man of ordinary observation, and there was nothing to prevent his observing and becoming acquainted with the condition surrounding and affecting the work in the trench. It also appears that there was a difference of opinion among the men engaged in the work in question respecting its safety. At the conclusion of the evidence on behalf of the plaintiff, the defendants demurred thereto, and the demurrer having been overruled, they rested their case without the introduction of evidence, and requested the court to direct the jury to return a verdict in their favor. The request was refused. Verdict and judgment were in favor of the plaintiff in the sum of $2000. One of the findings of fact is as follows:

"Ques. If you answer question 1 in the affirmative, state whether or not plaintiff sustained any injuries at either or any place to which he had called the foreman's attention as being dangerous. Ans. Yes."

The principal point discussed by counsel for plaintiff in error is thus stated in their brief:

"The plaintiff was not entitled to recover because, by the terms of his employment, he assumed all the risks incident to the business in the manner in which it was conducted; that his injury occurred in the performance of a risk which he assumed at the time of his employment; that no negligence was shown on the part of the defendant, and that the injury was due to his own negligence and want of care on his part."

Counsel further say in their argument :

"The excavation proper at the time of the injury was from twelve to fifteen feet deep. He (plaintiff) was acquainted and familiar with the entire workings of the trench, having from time to time worked in all parts of it and assisted in making excavations. From the time of his entrance into the trench he became fearful lest the banks on either side would give away and cave in and injury occur to him. It appears from his testimony to have been constantly on his mind. He was almost constantly grumbling and complaining about the likelihood or probability of the bank's caving in. It was a subject of almost daily discussion and conversation between the men working in the trenches. He spoke to the foreman, Bogardus, about it, and frequently discussed the matter with fellow employees in the presence of Bogardus. It was his opinion that a cave-in would occur. It was the opinion, however, of Bogardus that there was no danger in that direction."

The foregoing facts and the admission of counsel for plaintiff in error show that a difference of opinion existed among those engaged in doing the work in question concerning the risks incident thereto. The foreman, who possessed expert knowledge in the premises, assured the plaintiff, whose experience in work of that character was extremely limited, that the place of employment was a safe place, and, deriding the plaintiff's expressions of fear, directed him to proceed with the work. In such a state of facts, it was within the province of the jury to pass upon the question as to the alleged negligence of the defendants in carrying on the work of excavating and the question as to the assumption by the plaintiff of the risks incident to that work and known to him. This case does not belong to the class called "the gravel-pit cases," where the work is at all times hazardous,

27—10 KAN. APP.

and known to be such by all persons of ordinary intelligence. Here minds differed as to the safeness of the employment. The servant had misgivings concerning it, but the master, represented by the foreman, sought to allay those misgivings by positive assurances that the employment was safe and entirely free from danger. The servant, relying on such assurances, continued in the employment. The courts recognize a difference in the position of employer and employee under such circumstances.

"Master and servant do not stand on equal footing, even when they have equal knowledge of the danger. The position of a servant is one of subordination and obedience to the master, and he has a right to rely upon the superior knowledge and skill of the master, and is not entirely free to act upon his own suspicions of danger." (*Shortel v. City of St. Joseph*, 104 Mo. 114, 16 S. W. 397—syllabus.)

The above case cites and follows the decision in *Keegan v. Cavanaugh*, 62 Mo. 230, in which one paragraph of the syllabus reads :

"Where a hod-carrier engaged at work in an excavation, having manifested some reluctance to descend, was ordered by his employer to go down, and the earth caved in upon and killed him, *held*, that the order was an implied assurance that there was no danger ; that the laborer properly relied upon the superior information of the master, and that the latter was liable ; that in such case the question of negligence was for the jury."

In the opinion the court said :

"In this case, the evidence shows that Keegan, the laborer, was not without apprehension, but when one of his employers ordered him to go down, he did so promptly, upon the assurance implied in such an order that there was no danger."

It should be observed that in the foregoing case assurance of safety is held to have been implied in the order of the employer, while in the present case the assurance was given in most positive terms by the foreman, representing the employer.   In the case of *Malcomb v. Fuller*, 152 Mass. 160, 25 N. E. 83, one paragraph of the syllabus reads :

"On the question of the employee's care, it was competent for him to testify that after the superintendent told him there was no danger in the work he believed him."

In the case of *Miller v. Union Pac. R. R. Co.*, 12 Fed. 600, 603, the plaintiff had been ordered into a position of danger by the foreman in charge of the work and had obeyed the order, believing it to be safe for him to do so.   He was injured, and brought an action to recover damages.   In the opinion it is said :

"There may be cases in which the court can say, as a matter of law, that a servant, receiving an order from his master or from a superior, is guilty of negligence in obeying it, but the present is not such a case.   The law will rarely declare the act of obedience negligence *per se*.   If the circumstances be such that men of ordinary intelligence may honestly differ as to the question of negligence, it must be left to the jury."

In view of all the foregoing facts and decisions, it must be held that the trial court was warranted in overruling the demurrer to the plaintiff's evidence and in giving the following instruction, which, although excepted to by the defendants, is not complained of in their brief :

"If you find from the evidence that the plaintiff was engaged at the work in the excavation, and that he expressed to Mr. Bogardus, the foreman, his fear or his opinion that there was danger that the earth might fall upon him while working there, and that

Mr. Bogardus assured him that there was no danger, and the plaintiff, relying upon the better judgment and superior experience and information of the foreman, continued to work in the trench, and so was injured by the earth falling on him as alleged, you will find for the plaintiff, provided you further find that the defendant's servant in charge of the work was guilty of the negligence charged in the petition and which occasioned the injury."

Complaint is made of the admission of the testimony of the witness John Dowd, who testified that he was experienced in work like that in question ; that, from his experience, he was able to judge as to what was a safe and proper method of doing such work ; and that, in his opinion, the work was not being done in a proper manner. He stated that the wall of the excavation should have been made sloping or should have been shored to prevent its caving in. On cross-examination, he stated that his testimony was based upon what he saw, and that he was not testifying as an expert. Thereupon the defendant moved to strike out all his testimony in which he had stated his opinion concerning the character of the work, and the motion was sustained. Further examination of the witness was then made by the counsel for the plaintiff and by the court. Disclaiming to be an expert, he nevertheless stated that he understood that kind of work and felt confidence in his opinion concerning the same, and that he had special knowledge as to the proper method to be pursued to make the work safe, and that it was not being done in a proper manner. He also testified that his opinion was based upon what he saw, and upon his experience as a section foreman in doing work of that character. Thereupon the entire testimony of the witness was again admitted. In admitting the testimony, the trial court

made a statement, which appears in the record, to the effect that the witness actually testified as an expert in his direct examination, although he seemed to misapprehend the exact meaning of the word. We think the court ruled correctly in this matter. That the witness possessed expert knowledge in the premises is clearly shown by his testimony. Unacquaintance with the meaning of the term "expert" doubtless prevented his viewing himself as being so qualified. There was no dispute that the banks were not shored nor that one of them fell upon and injured the plaintiff. The witness having shown a personal acquaintance with the character of the trench and embankment, and with the manner in which the work was being done, as well as expert knowledge respecting that kind of work, it was proper to ask him whether it was being done in a correct and safe manner. The fact that the witness disclaimed being an expert will not preclude his testimony as such, where the evidence or circumstances show that he possessed the requisite qualifications. (*Crow v. State*, 33 Tex. Crim. Rep. 264, 26 S. W. 209.)

It is further contended by counsel for plaintiffs in error that the finding of fact hereinbefore set out is contrary to and unsupported by plaintiff's evidence. Since it appears that immediately before going into the trench and only a few minutes before the injury was sustained the plaintiff expressed his fears that a cave-in might occur, it must be held that there was some evidence tending to prove that he called the attention of the foreman to the particular place at which the injury occurred as being a dangerous place. But counsel contend further, that if the finding can be upheld the general verdict cannot be, since the finding shows both general and particular knowledge on the

part of the plaintiff respecting the hazards of the employment. This phase of the matter has already received our attention. We have discovered no reversible error in the record, and the judgment of the district court will be affirmed.