[No. 3703. Decided April 8, 1901.]

THE STATE OF WASHINGTON, *Respondent*, v. EBEN L. BOYCE, *Appellant*.

CRIMINAL LAW — PREMATURE ARRAIGNMENT AND PLEA — HARMLESS ERROR.

Error of the court, if any, in arraigning defendant in a criminal prosecution and compelling him to enter his plea before procuring counsel is cured by the subsequent action of the court, after the appointment of counsel, in allowing the plea to be withdrawn and the validity of the information to be attacked by demurrer and motion to quash.

SAME — PROSECUTION BY INFORMATION.

While certain facts must exist in order to warrant prosecution by information, it is not necessary that the existence of such facts should appear upon the face of the information.

SAME — CONTINUANCE — DISCRETION OF COURT.

The refusal of the court to grant a continuance in a criminal prosecution does not show an abuse of the discretion vested in it, when it appears that several of the witnesses, including those absolutely necessary to the defense, for whom the continuance was asked, were present at the trial, and that other witnesses were obtained from localities where the witnesses lived who were mentioned in the affidavit for continuance, and who testified substantially to all that it was claimed in the affidavit the witnesses desired would testify to.

JUROR — VOIR DIRE — RIGHT OF COURT TO PUT LEADING QUESTIONS.

The fact that the court, for the purpose of passing upon the qualifications of a juror who has been challenged, asks him the leading question, "Would you not obey the instruction of the court as to the law in the case"? would not constitute error.

SAME — COMPETENCY — BIAS.

A juror is not chargeable with bias or implied bias when he states on his examination that he would require no greater evidence to convict a man of murder in the first degree where the penalty is death than he would where the penalty is imprisonment in the penitentiary.

SAME — IMPRESSIONS ACQUIRED BY READING NEWSPAPER.

In a prosecution for murder, when the fact of killing was not denied, but the defense was based on drunkenness and insanity. a juror was not shown to be disqualified from the fact that he had read a newspaper account of the killing, but did not know who was charged; that he had no opinion as to the guilt or innocence of the accused; that what he read was a mere matter of news and he did not know whether the newspaper account was true or not, but he believed from the account the person whose name was given in the paper was the person who killea deceased, and that it would take considerable evidence to change his mind.

SAME — RELATIONSHIP BETWEEN ATTORNEY AND JUROR.

The fact that the attorney for the prosecution trades with a juror, and that the latter has a high opinion of him as a man, and would go to him if he should become involved in litigation, but has never consulted him as an attorney, is not a disqualification of the juror, under Bal. Code, § 4984, which provides that a challenge for implied bias may be taken when it appears that the juror and the attorney are standing in the relation of attorney and client.

WITNESSES — EXPERTS — COMPETENCY.

The action of the court in overruling an objection to the competency of a witness as an expert upon questions of insanity is not error, when the record shows that, although the witness stated he did not like the word "expert" and did not call himself an expert, yet he was a practicing physician; that he had examined people a great many times and even deprived them of their liberty in an asylum by his knowledge of insanity, though not assuming to be a specialist on that subject.

SAME — COMMENTS BY COURT ON QUALIFICATIONS.

Comments by the court upon the qualifications and competency of a witness offered as an expert do not constitute error, when the comments were made in answer to objections by the attorneys, in passing upon the qualifications of the witness.

SAME — HYPOTHETICAL QUESTIONS — HARMLESS ERROR.

Where objection was made that a question propounded to a

witness was not a hypothetical question, because not based upon the evidence in the case, the ruling by the court that it was a question for the jury and not the court to decide, if error, was without prejudice, when it plainly appeared from the record that the question was founded upon the testimony.

HOMICIDE — MURDER IN FIRST DEGREE — WHEN QUESTION FOR JURY.

Where the testimony of eye witnesses to a homicide tends to show malice, premeditation and deliberation on the part of the accused, it is proper for the court to refuse to take from the consideration of the jury the question of murder in the first degree.

ARGUMENT OF COUNSEL — REFERENCE TO MATTERS NOT IN EVIDENCE — WHEN PROPER.

It is not improper for the attorney for the state, in his closing argument to the jury, to advert to matters that the defendant's attorney in his opening statement claimed they would prove, and call attention to the fact that no evidence had been introduced upon those points.

SAME — INSTRUCTING JURY AGAINST IMPROPER ARGUMENT.

Where the court informs the jury that the remarks of counsel are not proper, it is equivalent to an order withdrawing the remarks from their consideration, and no error can be based upon the improper argument.

BAILIFFS — IN CHARGE OF JURY — RECITALS OF RECORD.

Where the record shows that the jury retired in charge of a sworn bailiff, it is a sufficient showing that the bailiff was sworn to take charge of the jury in accordance with the statute.

SAME — MISCONDUCT — REMOVING JURY FROM ONE ROOM TO ANOTHER.

The taking a jury from one part of a court house to a more comfortable room in the same building, after they had agreed on their verdict, but before it was received, does not constitute such a separation of the jury as to be misconduct on the part of the bailiff.

Appeal from Superior Court, Pierce County.—Hon. W. H. H. KEAN, Judge. Affirmed.

*James F. O'Brien* and *G. W. H. Davis,* for appellant.

*Fremont Campbell,* Prosecuting Attorney, and *Charles O. Bates,* for the State.

The opinion of the court was delivered by

Dunbar, J.—The information filed in this case charged appellant with murder in the first degree. Upon the trial he was convicted of murder in the first degree, and judgment was pronounced in accordance with the verdict. From such judgment this appeal is taken.

The first assignment of error is that the court erred in arraigning appellant and compelling him to enter his plea before he could procure counsel, and without appointing counsel for him. The record shows that the accused was arraigned and caused to plead before counsel were appointed for him. The accused killed his wife by shooting her several times with a revolver in a restaurant in the city of Tacoma. The shooting occurred February 10, 1900. The accused was arrested, arraigned, and pleaded, on Tuesday, February 13th, without counsel. There is no substance in the assignment of error, however, for after counsel were appointed on February 20th, they were allowed to withdraw the plea of not guilty, and a demurrer was interposed to the information, and motion to quash the information was also filed on the 21st of February; so that the error, if any, arising from the action of the court in causing defendant to plead before counsel were appointed, was remedied by the subsequent action of the court in allowing the plea to be withdrawn.

The second assignment is that the court erred in overruling the appellant's demurrer to the information. Outside of the fact that the record does not contain the demurrer, and no exception appears to the order of the court overruling the demurrer, we have examined the information, and think it is unassailable.

The third assignment is that the court erred in denying appellant's motion to quash the information, for the reason that neither the information nor record shows the neces-

sary facts to exist in order to prosecute by information. It may be stated that the record shows that this motion was not properly made, and not made at the proper time, it having been made after the overruling of the demurrer; yet, on the merits of the motion, in answer to the objection that the information does not show the necessary facts to exist in order to prosecute by information, viz., that there was no grand jury in session, and that the defendant had not been committed by a magistrate, it has been frequently held by this court that it was not necessary that the information should allege the existence of the facts authorizing the filing of the information. In *State v. Anderson,* 5 Wash. 350 (31 Pac. 969), it was said:

"The ground upon which the information is attacked is that it does not affirmatively appear upon the face thereof that there was no grand jury in session, nor that the defendant had been committed by a magistrate on said charge. Neither of these objections can avail appellant. It is true that certain facts must exist before the prosecuting attorney gets jurisdiction of the case in such a manner as to be authorized to file an information against the defendant, but the statute nowhere makes it necessary that the existence or non-existence of such facts should be made to appear upon the face of the information."

And such has been the uniform ruling of this court ever since.

The fifth assignment is that the court erred in denying appellant's motion for a continuance. Very strong affidavits were made by the attorneys for the defense in support of their motion for a continuance in this case. This motion was overruled by the lower court, and it is earnestly contended that there was an abuse of discretion of the court in denying the motion. We have examined with care the affidavits on file, but when taken in connection with the whole record, it appearing that several of the witnesses, whom it is alleged in the affidavit the defendant

would not be able to obtain at the trial were present and testified at the trial, and especially the father of the defendant, who, it was alleged, was absolutely necessary to the defense, and the additional fact that several other witnesses were obtained from the places where the witnesses lived who were mentioned in the affidavit, and who testified substantially to all that it was claimed in the affidavit the witnesses desired would testify to, we are not able to say that the court abused the discretion which is so largely vested in it by the law, or that the defendant was in any way prejudiced by the overruling of the motion. Neither does it appear from the record that any exception was taken to the ruling of the court in setting the case down for trial on March 19th. The murder was committed on the 10th of February. The arraignment and first plea were on the 13th. The appointment of the counsel to defend was on the 20th. On the 21st the plea was withdrawn, the motion and demurrer filed and overruled, and the cause set for February 27th. On the 24th day of February, counsel filed an affidavit for continuance over the term, it being just at the close of the jury term. The court, however, continued the case to March 19th.

The next contention is that the court erred in denying appellant's challenge for cause to juror J. J. Lemon. In answer to the question by Mr. Davis: "Would you require any greater evidence to convict a man for murder in the first degree where the penalty is death than you would to convict him where the penalty is imprisonment in the penitentiary?" the juror answered: "No, sir;" whereupon the juror was challenged for bias and implied bias. The court remarked, "I know of only one rule, and that is, beyond a reasonable doubt;" asking the following question of the juror: "You would obey the instruction of the court as to the law in the case, wouldn't

you, Mr. Lemon?" Answer. "Most assuredly." The court: "I see nothing in the juror that is unfair or biased so far." Mr. Davis: "We desire an exception to the ruling of the court." We think the court properly stated the rule. The juror must be convinced beyond a reasonable doubt of the guilt of the accused. The man who is on trial for a capital offense is entitled to this. He who is on trial for a lesser crime is no less entitled. Neither are we able to see in what manner the remarks of the court could have prejudiced the defendant. The court has a right to ask jurors leading questions, because it is the duty of the court to pass upon the qualification of the juror. We therefore think no error was committed in this respect. The same may be said of the further objection to the court's questions to the juror in relation to the juror's prejudice against the drinking of liquor.

The denying of the appellant's challenge to juror Oleson is the sixth assignment of error. The examination of this juror is too long to reproduce in this opinion, but in answer to the question, "Did the account you read in the News at the time tend to fix an impression in your mind as to the guilt or innocence of the defendant?" the answer was, "No, sir." Question: "Have you talked with any-"Have you ever expressed an opinion as to the merits of body about the case?" Answer: "No, sir." Question: the case?" Answer: "No, sir." Question: "Have you any opinion?" "No, sir." This was the first testimony of the juror in answer to plain questions, and it will be noted that he stated that the account that he read had not tended to fix either an opinion or an impression upon his mind, and that he had no opinion at the time of the examination. Further on, under the examination of Mr. Davis, counsel for defense, after the witness had stated that he had never heard any one speak anything about this case, the following occurred:

"Question.   You read an account of it, did you?

Answer.   Yes, sir; I read it in the paper; in the News or Ledger.

Q.   Well, at the time you read the account did you have any impression as to whether or not a woman had been killed?

A.   No, sir.

Q.   Did you have any impression as to who did it?

A.   No, sir; it was simply a man's name in the paper.

Q.   You thought that he was the one that did it?

A.   That is what I thought.

Q.   You thought that some one had killed a woman down here on Tenth street?

A.   Yes, sir.

Q.   Now, you believed from that the defendant, whose name was in the papers, was the man that did it, didn't you?

A.   Yes, sir.

Q.   And there has been nothing come up to change your mind since then, has there?

A.   No, sir.

Q.   You are still of that opinion, are you?

A.   Yes, sir.

Q.   Now, that opinion is still formed in your mind, is it not?

A.   Yes, sir.

Q.   And it would take considerable evidence to change your mind, would it not?

A.   Yes, sir.

Q.   You believe, do you, that the defendant should prove to this court and jury that he is not guilty of that charge?

A.   No, sir.

Q.   What is your opinion in regard to that?

The Court:   You need not answer that.

Objection.   Whereupon the juror was challenged."

In addition to the fact that the further examination elicited the statement that the juror did not know who it was that was charged with killing the woman, and did not know whether the newspaper account was true or not;

that, notwithstanding what he had read, he had no opinion
as to the guilt or innocence of the defendant, and that
what he had read was a mere matter of news,—the testi-
mony elicited by the attorney for the defense is not in any
way calculated to show any bias or prejudice on the part
of the juror. The substance of the whole examination
was that he had read in a newspaper that a woman was
killed, and believed from the reading of the account that
the person whose name was in the paper was the person
who killed her, not knowing whether the account was
true or not. If this witness were to be disqualified, every
man in the state who reads newspapers would be dis-
qualified. In addition to this, the killing of this woman
by the defendant was not denied, excepting so far as it
is denied by the plea of not guilty. It was proven beyond
a question, even by the defense, and the practical defense
was the irresponsibility of the defendant by reason of
drunkenness and insanity. So that under no circumstances
could the defendant have been prejudiced by the refusal
of the court to sustain the challenge to this juror. Nor
do we think that the examination brings the juror within
the rule laid down by this court in *State v. Moody,* 18
Wash. 165 (51 Pac. 356) ; *State v. Murphy,* 9 Wash. 204
(37 Pac. 420) ; *State v. Wilcox,* 11 Wash. 215 (39 Pac.
368) ; *State v. Rutten,* 13 Wash. 203 (43 Pac. 30), and
*State v. Crotts,* 22 Wash. 245 (60 Pac. 403).

There is another contention, viz., that this juror was
disqualified by reason of his relations with the deputy
prosecuting attorney, Mr. Bates. The examination in that
regard is as follows:

"Q. (By Mr. Davis, after some preliminary ques-
tions.) Are you acquainted with either of the attorneys
representing the state ?
A. Yes, sir.
Q. Are you acquainted with Mr. Bates ?

A.   Yes, sir.

Q.   Have you done any business with Mr. Bates?

A.   Yes, sir.

Q.   He is your attorney, is he?

A.   No, sir.

Q.   Buy groceries of you?

A.   Yes, sir.

Q.   How long have you been doing business with Mr. Bates?

A.   More or less for the last five years.

Q.   And right up to the present time?

A.   Yes, sir.

Q.   You consider him one of your customers in your business?

A.   Yes, sir."

And further on, after an examination on the merits of the case:

"Q.   Mr. Oleson, you are on friendly terms with Mr. Bates, are you not?

A.   No, sir—that is, Mr. Bates come in the store and buy the groceries, and I know Mr. Bates by that, and he do the business and pay his bills like a gentleman; that is all I know.

Q.   You are on friendly terms with him, are you not?

A.   I talk with him only on business, and so on.

Q.   Has he been your attorney in any case?

A.   No, sir.

Q.   In case you had litigation of any importance would you consult him in regard to it?

A.   Yes, sir, I would; but I have never had any litigation in court.

Q.   Then your regard for him is such that if you did have a case that you would consult him in regard to it?

A.   Yes, sir.

Q.   And retain him as your attorney?

A.   Yes, sir."

(Here a challenge was interposed.)

"Q.   (By the Court) Is Mr. Bates now your attorney?

A.   No, sir.

Q.   Has he ever been?
A.   No, sir.
Q.   You haven't any litigation in view, have you?
A.   No, sir.
Q.   You haven't any matters that you contemplate submitting to a counsel?
A.   No, sir."

(Challenge denied.)

"Q.   (By Mr. Davis)   Now, in considering this case, Mr. Oleson, as a juror, you would consider the opinion of Mr. Bates and his judgment and argument of this case as about correct, wouldn't you?
A.   No, sir.
Q.   You wouldn't be governed then so much by his opinion and his argument in this case as you would by some other attorney?
A.   Of course, I will do that what is the same way— the same as any attorney.   I don't give an opinion before I hear the case from both sides, and what the tale is and what my opinion is about it.   I don't care which attorney comes up and talks—of course, I can't say that now."

There seems to us to be no real merit in this contention.   Sec. 4984, Bal. Code, provides that a challenge for implied bias may be taken when it appears that the juror and the attorney are standing in the relation of guardian and ward or attorney and client, etc.   But it certainly cannot be the law that a juror is disqualified because he happens to have a good opinion of an attorney, either with reference to his ability as a lawyer or his reputation for paying his debts promptly.   If this standard were adopted, it would be almost impossible to obtain an unbiased jury in a community where a lawyer with a good reputation for legal ability and business integrity was engaged in the trial of the cause.

The ninth assignment is that the court erred in overruling appellant's objections to the qualifications and competency of witness Dr. T. F. Smith to qualify as an

expert; the tenth, that the court erred in commenting upon the qualifications and competency of the witness Smith; the eleventh, that the court erred in propounding leading, suggestive, improper and prejudicial questions to the witness Smith relative to his competency to testify as an expert; and the twelfth, that the court erred in commenting upon the testimony and qualifications of the witness Smith relative to his competency to testify as an expert. We do not think that the testimony of Dr. Smith, as a whole, shows that he was not competent to testify as an expert. The doctor said that he did not like the word "expert;" did not like to call himself an expert; but he did say that he considered himself enough an expert on insanity so that he examined people, even deprived them of their liberty in an asylum by his knowledge of insanity, and that he had done it a great many times, but that he was not a specialist on insanity; and his whole testimony showed that he drew a distinction between an expert and a specialist. While in the first part of his testimony he would not say that he was an expert, saying that he did not like the word "expert," he did say that he was competent to testify as an expert. Neither do we think that there was any prejudicial error committed by the court in commenting upon the qualifications and competency of the witness Dr. Smith. The comments were in answer to objections by the attorneys for the defense. The court, of necessity, passes upon the qualifications of the witnesses, and the remarks and answers that he made were natural and proper to the occasion.

It is also insisted that the court committed error in relation to a remark made concerning the hypothetical question which had been propounded by counsel for the state. The objection to the question was that it was not a hypothetical question, and was not based upon the evidence in

the case.    The ruling of the court was as follows:  "In my judgment it is always a question for the jury.  If the question is not based on the evidence the jury can exclude it and should exclude it."  It is contended by the appellant that the fact as to whether or not the question was hypothetical, and based upon the facts, was to be decided by the court before the witness answered the question. But even conceding, without deciding, that the court erred in the reasons it assigned for allowing the question, there was no prejudicial error committed, for the record plainly shows that the question was founded upon the testimony.

It is also contended that the court erred in overruling the appellant's motion to take from the consideration of the jury the question of the guilt or innocence of the appellant as far as murder in the first degree was concerned, upon the ground that the state had not shown by any competent testimony the facts necessary to exist in order to constitute murder in the first degree.  We cannot agree with counsel for defense in this contention.  If the testimony of eye-witnesses to the crime is to be believed,—and it was the province of the jury to pass upon its credibility, —it was ample to show malice, premeditation, and deliberation on the part of the defendant.  We have examined the instructions given by the court in this case, and are not able to find any error in such instructions.  They stated the law of the case and were full and fair, and no other instructions were necessary to protect the rights of the defendant.

Assignments fifteen and sixteen relate to alleged errors of the prosecuting attorney in his closing argument to the jury.  In the closing argument the state's attorney made the following statement to the jury:

"Mr. Davis, the attorney for the defendant, said in his opening statement as to what they would prove, that the

defendant met and married the deceased in a sporting house in San Francisco, California, but not one word of evidence has been produced."

Attorneys for the defendant then objected to the statement of the state's attorney, and asked the court to instruct the jury that they should not consider the same, and to instruct the state's attorney against making such statements; but the court stated that such statements were legitimate argument, and refused to comply with the request of defendant's counsel. The state's attorney then proceeded and said: "They said in their opening statement that they would prove that the defendant drank beno-beno in the Philippines and that it made him crazy, but not one word has been given in evidence of that fact,"—to which defendant also excepted. The record shows that the attorney for defense had in his opening statement made the remarks attributed to him by the state's attorney in his closing argument, and we think with the court that the statements made by the state's attorney were legitimate argument. The assertion had been made by the defendant's attorney. If it had not been called to the attention of the jury in the closing argument that these assertions had not been substantiated by proof, the bare statement of the attorney might have left the impression in the minds of the jurors that proof to that effect had been made. It was certainly the right of the state's attorney to clear the minds of the jurors of any false impressions that may have been lodged there by reason of statements made by counsel in the opening statement, which had not been proven. Further in the argument the state's attorney said: "You have seen the defendant here in the court room from day to day. You can see that he is sane, and you know it." And in the closing remarks he said: "It has been commonly known in this county that criminals were not

punished." Whereupon attorneys for defendant objected to the statement and the court ruled that the statement was not proper. The state's attorney then said: "It is too often the case that criminals go unpunished." The court again cautioned the state's attorney, when he, proceeding, said: "No matter what is done in other counties in the state, in Pierce county it shall not be said that criminals go unpunished." No exceptions were taken to this last remark. We are inclined to think that the remarks of the state's attorney did not contain any prejudicial error. Some latitude must be given to counsel in the heat of discussion, and, as has been often said, if every apparent indiscretion which a counsel is guilty of in his remarks to the jury were to be the subject of review, the appellate court would have no time to pass upon graver questions, but its time would be occupied in reviewing remarks of counsel. In addition to this, the jury was informed by the court that the remarks were not proper, which was equivalent to an order withdrawing the remarks from the consideration of the jury. The record convinces us that the court was justified in overruling the motion for a new trial, and that there was no misconduct of the jury that was prejudicial to defendant.

It is also claimed that the record does not show that the bailiff was sworn to take charge of the jury, as required in capital cases. But the record does show that the jury were placed in the custody of sworn bailiffs to deliberate upon their verdict, and the statement in the record that the jury retired in charge of a sworn bailiff is sufficient to show that the bailiff was sworn. *State v. Barkuloo,* 18 Wash. 141 (51 Pac. 350).

Neither do we think there is any merit in the contention that there was misconduct on the part of the bailiff in allowing the jury to separate, and taking them from

one part of the court house to another, after they had agreed upon their verdict but before it was received. This was not such a separation as was discussed in *Anderson v. State,* 2 Wash. 183 (26 Pac. 267). The jury in this case did not actually separate from the commencement of the trial until after they had rendered their verdict, but were simply taken to more comfortable quarters in the same building.

Neither do we think there is anything in the motion for a new trial on the ground of newly discovered evidence.

The defendant had a fair trial, the law was properly administered by the court, his rights were guarded by the instructions, there was no error in the admission or rejection of testimony, the jury have found the facts against him, and he must abide by the verdict.

The judgment is affirmed.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.