## BORNEMAN v. CHICAGO, ST. P., M. & O. RY. CO.

1. Where plaintiff's horse was struck by defendant's train on defendant's right of way, it was a trespasser, and defendant was only bound to use reasonable care to avoid injury to it after discovering it in close proximity to the track.

2. Where, in an action against a railroad company for striking plaintiff's horse, defendant's engineer testified that he could have stopped the train within 300 feet, and that when he saw the horse he did not have time to stop before striking him, plaintiff was entitled to introduce evidence in rebuttal that a horse standing 25 feet either way from the track at the point where the horse in question was struck could be plainly seen for a distance of 1,500 feet in the direction from which the train approached.

3. Where, in an action against a railroad company for striking plaintiff's horse, the engineer testified that he was keeping a lookout, and could have stopped his train within 300 feet, but did not see the horse in time to stop before striking him, and plaintiff's evidence showed that the animal was in the engineer's line of vision while the train was moving more than 1,500 feet, it was not error for the court to overrule defendant's motion for a directed verdict, the jury being entitled to find that defendant could have avoided the accident, notwithstanding his positive statement to the contrary.

4. Where, in an action against a railroad company for striking plaintiff's horse, defendant introduced evidence as to the speed of the train, it was not error for the court to receive further competent evidence offered by plaintiff on such issue.

5. Whether a witness was competent to testify as to the speed of a certain

train was for the determination of the trial court, whose ruling would not be reversed in the absence of palpable error.

6. On an issue as to the violation of a speed ordinance by defendant's train at the time it struck plaintiff's horse, an instruction that defendant's act in violating such ordinance was proper for the consideration of the jury in determining whether defendant was negligent in fact was not error.

7. Where, in an action against a railroad company for striking plaintiff's horse, the complaint charged that defendant, by its agents and servants not regarding its duty in that respect, so carelessly and negligently ran and managed one of its locomotives that the train attached to the same ran against and over plaintiff's horse, etc., it was sufficient to justify the introduction of municipal speed ordinances regulating the speed of trains and providing for the giving of signals within the limits of the city where the horse was struck.

8. Where no instructions were requested and no exceptions were taken to the instructions given, it will be presumed on appeal that all material issues of fact were properly submitted to the jury.

9. Where, in an action against a railroad company for striking plaintiff's horse, defendant did not contend that plaintiff was guilty of contributory negligence as a ground for its motion for a directed verdict, it could not raise such objection on appeal.

10. Where, in an action against a railroad company for injuring plaintiff's horse so that it had to be killed, there was competent evidence that the horse was worth $200, and the only evidence to the contrary was plaintiff's verified claim, in which the value was placed at $100, which plaintiff explained by saying that he thought if he placed the value at such amount he might get something without suit, the verdict in plaintiff's favor for $200 was not excessive.

(Opinion filed July 6, 1905.)

Appeal from circuit court, Minnehaha county; Hon. JOSEPH W. JONES, Judge.

Action by E. A. Borneman against the Chicago, St. Paul, Minneapolis & Omaha Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*Hosmer H. Keith*, for appellant.

HANEY, J.   This is an action to recover damages for the loss of a horse belonging to the plaintiff through the alleged negligent operation of one of defendant's trains.   The issues involved are thus stated by the learned circuit court in its charge, to which no exceptions were taken:  "The evidence in this case shows that the horse was not struck at a crossing, but was struck upon the right of way, upon the track where there was no crossing, on private grounds, and on the railroad right of way.   The horse was therefore a trespasser, and it was not the duty of the locomotive engineer, or of the brakeman, or any of its servants, to keep a lookout for the horse; and they are not guilty on account of any failure to see the horse; but if the engineer did see the horse, and saw that it was in close proximity to the track, and liable to be hurt, then it was the duty of the engineer to use reasonable care and precaution to avoid, if possible, the injury.   He was not bound to keep any lookout in order to see if any stock was there, but he was bound to stop the train and prevent injury if he did see the stock in time to enable him by exercising reasonable care to do so.   In addition to other evidence in this case, there has been introduced an ordinance of the city limiting the speed of railroad trains within the city limits to six miles an hour.   This is simply introduced along with the other evidence that you may weigh and consider it.   The railroad company was not per se necessarily negligent because it may have run the train at a greater rate of speed than six miles an hour; but the question of whether that rate of speed was dangerous to stock that might be along the right of way—whether they were negligent

in regard to the speed of the train—is a question of fact for you to determine, taking into consideration all the facts and circumstances, including the evidence of the ordinance introduced on that subject. But the fact that the city has an ordinance limiting the speed of trains to six miles an hour does not of itself make it negligent to run a train at a higher rate of speed. A matter for you to determine will be whether or not the engineer saw this horse in time to, by reasonable care, and the use of reasonable diligence, have prevented the accident. You have heard all the testimony in this case upon that as upon all other subjects. You are the judges of the credibility of witnesses and the weight of their testimony, and it is for you to determine, under all the facts and circumstances, whether or not he did see the animal in time to have saved it by the exercise of reasonable care and diligence in that regard. If he could have, by the use of ordinary care—reasonable care—stopped the train, or otherwise prevented the injury, and he neglected and failed to exercise that care, then the railroad company is liable. But if he could not, after he saw the horse, have prevented the accident by the use of ordinary care, then the railroad company is not liable in this case, unless you believe it was negligent in other respects; that is, by running the train too fast, or by the failure to give the usual signals or ringing the bell or blowing the whistle. Upon this subject of the bell and whistle, I will read you the language of the Code, section 3016 of the Compiled Laws of 1887: 'A bell at least thirty pounds weight, or a steam whistle shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or

street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of fifty dollars for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer and the other half to go to this territory, and also be liable for all damages which shall be sustained by any person by reason of such neglect.' This to be taken into consideration in this case purely upon the subject whether or not any failure to ring the bell, if any did exist, caused the injury to the animal to occur. If it was not the cause of the injury to the animal, and it did not grow out of that, then what I have read and said in regard to the whistling would have no effect. The thing for you to determine is this: Were the servants of the railroad company, in operating the train, negligent or not? Did they exercise reasonable care? If they were negligent, did that negligence cause this injury?"

Defendant's engineer testified as follows: "We left Sioux Falls to go to Salem about two o'clock. That was the regular time of leaving. I think the train started on time. * * * I remember the occasion of this accident, and where it occurred. It was about 60 feet to the west of the Twelfth Street Viaduct in this city. I was going west that day on this trip. As we passed under the Twelfth Street Viaduct I saw the horse break out of the ditch and weeds directly towards the west side of the track, not to exceed 50 feet from the engine, ahead of the engine, and make an effort to jump across the track. I shut off steam immediately, but before I had time to do anything further—I was so close to the horse at the time—we had collided with him, and the horse was thrown up on the pilot of the engine, and carried along a short distance, and rolled off

right side of the track in the ditch on my side.  *  *  *  Q. You may state whether it was possible, from the time you saw that horse until he was struck, to have stopped that engine and that train of cars.  A.  No, sir.  It was impossible.  Q.  You may state whether or not you did all in your power to stop it.  A.  I did in the length of time I had.  *  *  *  Q.  Where was the horse when you first saw it?  A.  On the south side of the track, on the left-hand side.  I was on the north side.  Q.  You may state to the jury whether you were on the lookout.  A.  I was, most assuredly; yes, sir.  *  *  *  Q.  When you first saw the horse, what did you do?  A.  I pulled the throttle, and by that time we had him.  The horse made a jump for the track, and all I had time to do was to pull the throttle.  I did not apply the air brakes because I saw I had the horse, and it was useless to apply the air brakes then."  He also testified that the train was running not to exceed 15 miles per hour, and that it could have been stopped within a distance of 300 feet.

On the day before the trial a horse was taken to the point near the track where the plaintiff's wife and son swore the injured horse was standing when the train approached, and persons who walked on the track from that point eastward for more than 1,500 feet were permitted to testify that this horse standing 25 feet either way from the track, could be seen plainly the entire distance.  Evidence on the part of the plaintiff in rebuttal, tending to prove the distance the engineer could have seen live stock on or near the track at the time of the accident, was competent.  Sheldon v. Ry. Co.; 6 S. D. 606, 62 N. W. 955.  The evidence introduced for that purpose was undoubtedly the best which the nature of the case afforded, and

no error was committed in receiving the same.   While it was not the engineer's duty to be on the lookout for trespassing stock, it appears from his own testimony that he was in fact looking forward along the track as the train approached the place where the accident occurred, and that the train could have been stopped within in a distance of 300 feet.   If, as plaintiff's testimony tended to prove, the animal was within the engineer's line of vision while the train was moving a distance of more than 1,500 feet, it is certain he could have seen it in time to have avoided the accident, and the jury were at liberty to believe he did, notwithstanding his positive statement to the contrary.   Sheldon v. Ry. Co., supra; Lighthouse v. Ry. Co., 3 S. D. 518, 54 N. W. 320.   Therefore the learned circuit court committed no error in overruling defendant's motion for a direction of the verdict.

John Barber, called on behalf of plaintiff, testified that he was near the track where and when the accident occurred; that his business was carpentering and farming; that he had seen trains run; that he had ridden on them a great deal; and that he knew something in regard to speed of trains from having seen and ridden on them.   He was permitted over defendant's objections, to state that in his judgment the train was running at the rate of at least 30 miles an hour.   One of defendant's employes had sworn on direct examination that it was running at its usual rate of speed; another, on cross-examination, without objection, that it was running between 12 and 15 miles per hour.   The matter of speed, whether material or not, having been thus introduced, it was certainly not error to receive further competent testimony touching the same subject.   All statements concerning the speed of trains, except

19 S. D.—30

where the witness observes the time actually occupied in run-- ning a known distance, are necessarily expressions of opinion.. By close observation and frequent tests any person may be come proficient in estimating the speed of moving objects. "It has frequently been held that those who have habitually ob- served the passage of railroad trains may give an estimate of their rate of speed, and that the testimony on the subject is not confined to experts." 2 Jones Ev., § 364. The question involved is not one of science, but of observation. Detroit Ry. Co. v. Van Steinburg, 17 Mich. 99. But, assuming that all persons are not competent to testify on the subject, it was for the trial court to determine whether this witness possessed the requisite qualifications, and its ruling should not be reversed in the absence of palpable error. Waterhouse v. Brewing Co., 16 S. D. 592, 94 N. W. 587. Such error does not appear.

It is contended that the court erred in permitting the in- troduction by the plaintiff of certain sections of an ordinance prohibiting a greater rate of speed than six miles an hour, and requiring the bell to be rung continually on all engines while running within the city limits. Many cases lay down the rule that the violation of a statute or ordinance constitutes negli- gence per se, or conclusive evidence of negligence. The rule of other cases seems to be that the violation of a statute or municipal ordinance is prima facie evidence of negligence. In still other cases the courts have been content with the an- nouncement that evidence of the fact that the defendant's act constituted the violation of a state or municipal law is proper for the consideration of the jury in determining whether the defendant was in fact negligent. 21 Am. & Eng. Ency. Law (2d Ed.) 478, 479. As the last-mentioned view—the one most

favorable to the defendant—was taken by the court below in its charge to the jury, to which no exceptions were preserved; it is not necessary in this case to determine which should prevail in this jurisdiction, and no error was committed in permitting the ordinance to be received, provided it was within the issues raised by the pleadings. The negligence relied upon is thus charged in the complaint: "That the said defendant by its agents and servants not regarding its duty in that respect, so carelessly and negligently ran and managed one of its locomotives with a train of cars attached thereto that the same ran against and over said horse of the plaintiff, and maimed and injured the same so that it became entirely worthless, and was thereupon and on the same day killed by the servants and employes of defendant, to plaintiff's damage in the sum of $200." The language of the pleading hardly could be more general and comprehensive. The declaration is, in effect, that defendant's train was negligently operated, which clearly includes disregard of rules relating to speed and giving of signals. If defendant desired to be informed in what particulars it was charged with having failed to properly operate its train, it should have moved to have the complaint made more definite and certain. The section of the ordinance relating to speed was not irrelevant, though not specially pleaded, and defendant's objections to its introduction were properly overruled.

Reversible error cannot be predicated upon the introduction of the provision of the ordinance regarding the ringing of the bell, because, like the provision relating to speed, it was within the issues; and, in the absence of any exceptions to the charge or request to charge on that subject, defendant cannot

maintain that it was given undue consideration by the jury. Moreover, under the circumstances of this case, the matter was immaterial because of the statute on the same subject alluded to by the court in its instructions to the jury.

As no instructions were requested and no exceptions were taken to the instructions given by the court, it must be assumed, for the purposes of this appeal, that all material issues of fact were properly submitted to the jury, and the defendant is not in position to contend that the plaintiff's negligence contributed to the injury, that ground not having been included in its motion for a direction of the verdict.

The verdict, which was for $200, is claimed to be excessive. There was abundant competent evidence showing the horse to have been worth that amount, to which nothing was opposed except a statement of claim against the company verified by the plaintiff, wherein its value was placed at $100, in explanation of which the plaintiff testified that only $100 was claimed simply because he thought "if he put the price clean down" he might get something without suit. The statement, if competent for any purpose, was merely an admission which did not preclude other proof of the animal's fair market value, and the effect of which was entirely overcome, if credit be given the plaintiff's very reasonable explanation. As we view the evidence, there was no room for controversy concerning the proper amount of damages.

The judgment of the circuit court is affirmed.