STATE, Respondent v. PERCY, Appellant

(117 N.W.2d 99)

(File No. 9956. Opinion filed September 28, 1962)

**Horace R. Jackson,** Rapid City, for Defendant and Appellant.

**A. C. Miller,** Atty. Gen., **Joseph H. Bottum, III,** Asst. Atty. Gen. Pierre, **James H. Wilson,** State's Attorney, Rapid City, for Plaintiff and Respondent.

RENTTO, P. J. The defendant was convicted of indecently molesting a male child of the age of five years. As authorized by our habitual criminal statute his term of imprisonment was enhanced to twice the maximum—40 years. This appeal from such judgment is prosecuted by counsel appointed by the court but not the same counsel who represented him on the trial, also by court appointment.

Many of the errors assigned question the validity of our habitual criminal statute and the manner in which it was here invoked, as well as the procedures followed in its utilization. Concerning the trial itself his principal complaint is that a witness

who identified human sperm in a smear taken from the victim's body shortly after the incident was not qualified to testify.

.    On the morning of October 10, 1960, the victim left his home at 10 or 15 minutes before 9 to attend kindergarten at his school one block away. His mother next saw him that morning on the porch of their home about 9:30. She said "he was crying in a frightened sort of way". As he came into the house he walked with some difficulty, rather stiff-legged, holding his hand on his rectum and said to her "Mommy, a man took me in his truck and he hurt me."

In examining the victim's body his mother observed bright red blood around the anus or rectum and dried blood and soil on his underwear and anus. He was then taken to the Medical Center where Dr. Bailey examined him and, with a sterile swab, took a smear of the anal opening. This he gave to the laboratory technician who prepared a slide from it which she examined microscopically. She testified that after viewing the slide for several minutes she found what she felt to be human sperm, or what she thought appeared to be human sperm.

This technician had taken an 18-months course at the College of Medical Technology in Minneapolis. Twelve months of this were devoted to studies of laboratory work and six months to X-ray. In her training she had been taught to recognize human spermatozoa under a microscope. She was not registered as a medical technologist by The American Society of Clinical Pathologists but had been employed by the Medical Center for about 6½ years as a technician. This was her first occasion to examine a smear from the rectal area. However, she had previously examined vaginal smears.

On her cross-examination appears this question and the following answer:

"Q. Now, Phyllis, I notice that you very carefully qualified your answer by saying what appeared to be human sperm. Does that mean that you are not exactly sure what you saw was human sperm?

"A. I am not qualified to say whether it was sperm or not."

Thereupon the defendant moved that her previous testimony as to the presence of human sperm on the slide be stricken because she admitted being unqualified to testify as to such matters. This was denied.

■ ■ The qualification and competency of a witness to speak as an expert is primarily in the discretion of the trial court and his ruling will be disturbed only in case of a clear abuse of discretion. State ex rel. Helgerson v. Riiff, 73 S.D. 467, 44 N.W.2d 126; Wentzel v. Huebner, 78 S.D. 481, 104 N.W.2d 695. However, if a witness offered as an expert disclaims qualification to testify on the matter under inquiry manifestly his testimony is inadmissible. Wehner v. Lagerfelt, 27 Tex.Civ.App. 520, 66 S.W. 221; Maryland & P. R. Co. v. Tucker, 115 Md. 43, 80 A. 688; Mitchell v. Slye, 137 Md. 89, 111 A. 814; Cumberland & Westernport Transit Co. v. Metz, 158 Md.424, 149 A. 4; Fisher v. Flanagan Coal Co., 86 W. Va. 460, 103 S.E. 359; Reimers v. Petersen, 237 Iowa 550, 22 N.W.2d 817. We have not overlooked those cases which hold that an expert witness is not incompetent to testify merely because he chooses not to refer to himself as an expert. That situation is not presented. Rather, we have here a witness who stated she was not qualified to answer the specific inquiry.

■ The logic of this view is well stated by the Supreme Court of New Jersey in Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 96 A.2d 387. It is there written:

"The witness was not at all certain of the supposed knowledge offered as well founded in special and peculiar experience. Knowledge is an essential element of testimonial qualifications, and such testimony as was tendered here has no probative force unless the witness is fitted to answer on the point. The witness, himself, said he did not know. While absolute certainty is not the standard of testimonial worth, there must needs be a showing of observation or knowledge proceeding from experience sufficient to qualify the witness to express an opinion on the subject matter. Wigmore on Evidence

(3rd ed.), sections 555 et seq. Compare Carbone v. Warburton, 11 N.J. 418, 94 A.2d 680 (1953). Here, the eventual concession made by the witness would seem to be a disavowal of the requisite testimonial expert qualifications, or, at the very least, an unsureness that militates against the trustworthiness of his opinion."

This reasoning seems to us especially applicable here. Accordingly we feel compelled to hold that the court erred in not striking the questioned evidence.

While it is not material on this point we think it proper to observe that Dr. Wayne A. Geib, a physician trained and practicing as a pathologist, called as an expert witness by the court, testified there were no structures on the slide in question that he identified as sperm after a search of approximately two hours. He also stated there were many objects on the slide which "superficially resemble sperm".

To determine whether this error was prejudicial we must examine other circumstances in the case. SDC 1960 Supp. 13.1727, the statute under which defendant was prosecuted, provides:

"Any person who shall willfully and unlawfully commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of fifteen years, with the intent of arousing, appealing to, or gratifying the lust or passion or sexual desires of such person, or of such child, shall be guilty of the crime of indecent molestation of a child."

In all cases arising under this section the purpose of the perpetrator in touching the child is the controlling factor. Proof that it was done with the intent of arousing, appealing to, or gratifying the lust or passion or sexual desires of the perpetrator, or of the child, is essential to a conviction. Of course, proof of this fact, like any other, may be made circumstantially.

■ No good purpose would be served by reviewing here the remaining evidence in the case. Suffice it to say there was no other evidence of any sperm in the smear taken from the victim's body except that given by the technician and that because of his infancy the victim was not permitted to testify. After carefully

studying the record we are satisfied that a jury could find beyond a reasonable doubt that the defendant committed an act upon the body of the child resulting in the injury to him testified to by his mother and Dr. Bailey. The critical issues in this case are the nature of the act and the intent with which it was done.

Implicit in the verdict is the finding that the act was committed with the intent specified in the statute. We think it beyond question that the challenged evidence in all probability was an effective factor in producing this result. It was the only evidence other than the nature of the victim's injury bearing on the perpetrator's intent. While the evidence establishes the time and place where the injury was inflicted there is no evidence except the technician's, as to how. Errors that in another case are harmless may be of great importance if committed in a case like this. People v. Adams, 14 Cal. 2d 154, 93 P.2d 146, 153. The California Supreme Court in People v. Evans, 39 Cal. 2d 242, 246 P.2d 636, wrote concerning a prosecution under a similar statute:

> "In a case such as this where the crime charged is of itself sufficient to inflame the minds of the average person, it is required that there be rigorous insistence upon observance of the rules of the admission of evidence and conduct of the trial."

Consequently we must hold that the refusal to strike the questioned evidence was prejudicial to the substantial rights of the defendant.

He also complains that over objection the victim's mother was permitted to testify as to statements made to her by the victim at 8:30 a.m. on the day following the incident, as she was parking their car at a grocery store, identifying the defendant as the one who assaulted him. It is contended that these declarations by the victim are inadmissible because they are not sufficiently contemporaneous with the event.

Concerning this kind of evidence, in State v. McFall, 75 S.D. 630, 71 N.W.2d 299, we quoted with approval the following generalization by Professor Wigmore:

> "Under certain external circumstances of physical shock, a stress of nervous excitement may be produced

which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."

An extra judicial statement made in these circumstances is regarded as being trustworthy and consequently admissible. Such statements are admissible even if not strictly contemporaneous with the exciting cause. The critical inquiry is whether they were made while declarant was still under the influence of the experience. Wigmore on Evidence, 3d Ed., § 1750. In the McFall case this court also said: "Where the victim is of an age as to render improbable that her utterance was deliberate and its effect premeditated the utterance need not be so nearly contemporaneous with the act as in the case of an older person." Numerous cases on this same feature are collected in the annotation in 83 A.L.R.2d 1368.

■■ While the time that elapsed between the event and the statement is a factor to be considered, it is not determinative. Whether an utterance was made under the influence of the event must be determined on the basis of the circumstances in each case. The admissibility of such statements is in the sound discretion of the trial court and we will disturb his holding only if convinced that such discretion was abused. However, our study of this record fails to disclose any evidence from which the court could find that this young boy was under the influence of the experience when he made the statements. In this regard his mother testified only that his facial expression was serious when he made them. We must therefore hold that this evidence should have been excluded.

As the other matters urged are not likely to arise on a new trial there is no need to discuss them.

Reversed.

ROBERTS and SMITH, JJ., concur.

BIEGELMEIER, J., dissents.

HANSON, J., concurs in dissent.

BIEGELMEIER, J. (dissenting). Much has been written on the effect of statements of an expert witness as to his qualifications. A reading of the cases cited by the majority shows they involve hypothetical questions, are comments and expressions of dictum. Only Fisher v. Flanagan Coal Co., 86 W.Va. 460, 103 S.E. 359, reversed the trial court's ruling. By their result they are in agreement with our holding in State ex rel. Helgerson v. Riiff, 73 S.D. 467, 44 N.W.2d 126. Other authorities are: 20 Am.Jur., Evidence, § 786; 22 C.J. Evidence § 609, p. 526; 32 C.J.S. Evidence § 458, p. 99, n. 70; Jones v. Tucker, 41 N.H. 546; Boardman v. Woodman, 47 N.H. 120, 135; State v. Boyce, 24 Wash. 514, 64 P. 719; Christman v. Pearson, 100 Iowa 634, 69 N.W. 1055; Walker v. Scott, 10 Kan. App. 413, 61 P. 1091; Crow v. State, 33 Tex.Cr. 264, 26 S.W. 209. See especially Glover v. State, 129 Ga. 717, 59 S.E. 816 at 819 which contains excellent reasoning. These cases hold the qualification and competency of an expert witness is in the discretion of the trial court and his ruling upheld only in case of a clear abuse as the opinion states. Nearly all the decisions uphold the trial judge's rulings. We should do so here and not lend more weight to the one quoted statement of the witness than to others. In Waterhouse v. Jos. Schlitz Brewing Co., 16 S.D. 592, 94 N.W. 587 and Borneman v. Chicago, St. P., M. & O. Ry. Co., 19 S.D. 459, 104 N.W. 208, this court held it was for the trial court to determine if the witness possessed the requisite qualifications to testify on the subject and its ruling should not be reversed "in the absence of palpable error". Later in State v. Riiff, supra, it wrote:

> "The qualifications and competency of a witness to give opinion evidence is primarily in the discretion of the trial court and his ruling in determining qualifications will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous legal standards."

Wigmore contends "it cannot be doubted that the rule of the future ought to be: **The experiential qualifications of a particular witness are invariably determined by the trial judge, and will not be reviewed on appeal."** Wigmore, Evidence, 3rd Ed. § 561.

We need not go so far but only accept, as indeed the majority avers, the State v. Riiff pronouncement that the trial court's "ruling in determining qualifications (of a witness) will not be disturbed unless there is **no** evidence that the witness had the qualifications of an expert * * *." The majority opinion refers to her education, training and experience. The evidence shows more in detail she took courses in histology, bacteriology, hemotology and all courses pertaining to medical technology that would qualify her to recognize various tissues and organisms under a microscope and do chemistries and bacteriologies, hemotology, urology and all laboratory procedures at the medical center; that she knew the proper procedure for staining and preparation of samples, including the Gram method of testing; that her training taught her to recognize spermatozoa under a microscope and in her years of experience she had conducted many such examinations. Three times before she was permitted to testify to the presence of spermatozoa, defendant's attorney asked and was granted permission to cross-examine her as to her qualifications and procedures. On this foundation and because for 6½ years she had been and was then employed as a medical technician at a medical clinic, the trial judge concluded she had the necessary qualifications. State v. Riiff, supra, requires this court to affirm this ruling if there was any evidence to support it.

A jury and a reviewing court should consider all the testimony of a witness, not the one isolated answer. After the foundation was laid, the record continues:

"Q. Now, Phyllis  * * * will you tell what you saw under the microscope? A. * * * I found what I felt to be human sperm, or what I thought appeared to be human sperm.

"Q. A considerable number of sperm? A. No, they were very few.

"Q. Now did you advise Dr. Bailey the results of your examination? A. Yes. * * *

"Q. Now, Phyllis, I notice that you very carefully qualified your answer by saying what appeared to be human

sperm. Does that mean that you are not exactly sure what you saw was human sperm? A. I am not qualified to say whether it was sperm or not."

Defendant then made his motion to strike her testimony dealing with human sperm which the trial court denied. This is the ruling this court declares erroneous. Not content to rely on that record, defendant then proceeded to add to it. After further questions and answers as to how many sperm she saw, defendant's counsel asked:

"Q. Phyllis, this organism which you say appeared to be human sperm, would it also be safe to say, or could we just as well say that they appeared to be white cells also? A. No.

"Q. Could we say that they could have been any-thing else other than human sperm? A. To me they couldn't have been, no."

This evidence adduced by defendant remains without a motion to strike it. Such is the record—the weight and value of her testimony was for the jury. The jury and the trial court could observe the manner and demeanor of the witness and consider that she had been through a thorough and battering cross-examination directed to disparaging her education and status. Included were questions as to her education in a school not recognized by some medical association, that she was not a member of some national association or registered or accredited by it. None of these were necessary requirements for her to testify. We must be realistic enough to know diagnoses are rendered, medicines prescribed, operations performed and the very lives of patients are in the balance based on the reports of this technician. The doctors in the clinic rely on and have faith and confidence in her training and ability. The trial court concurred. This reviewing court de-clines to do so.

All the answers should be read together, not one to the ex-clusion of others. If the answer quoted in the majority opinion be held to limit her previous testimony, it did not qualify her later answer positively given that it couldn't "have been anything else other than human sperm."

Other evidence fit together to amply prove defendant's guilt. SDC 1960 Supp. 34.2902 directs this court to disregard error which does not affect a substantial right of defendant. See State v. Poppenga, 76 S.D. 592, 83 N.W.2d 518. Defendant did not testify on his own behalf. The reason was evident for after the trial, an information was filed under the Habitual Criminal Act charging him with having committed a similar indecent molestation offense upon his eight-year-old sister-in-law in Minnesota which, with other sex crimes, he admitted. None of this was before the jury, nor is it material here for the innocent and guilty are entitled to a fair trial. Indicative of this after a conference with counsel, a pathologist was called as a witness to testify as to his examination of the slides for sperm made some months later. He was the last witness—called and examined by the court as its expert witness.

In regard to the mother's evidence of her son's identification of the defendant there was other evidence defendant said he thought he was the little boy he picked up in the Robbinsdale area that morning and he drove him to a place on a dirt road about a block from his home. The mother's testimony was cumulative and thus not prejudicial.

I cannot concur in setting aside this conviction for the reasons stated and therefore dissent.