# CHARLESTON

## SLAUGHTER v. CITY OF HUNTINGTON.

Submitted March 17, 1908.    Decided March 31, 1908.

1. MUNICIPAL CORPORATIONS—*Obstruction of Sidewalk—Contributory Negligence—Directing Verdict.*

   In an action against a municipal corporation for injuries caused by an obstruction of a street or sidewalk, when the evidence of the plaintiff proves such facts and circumstances as show that the plaintiff was guilty of contributory negligence in causing the

injuries, the court should on the motion of the defendant exclude all the plaintiff's evidence from the jury.   (p. 240.)

2.  NEGLIGENCE — *Contributory Negligence — Question for Court and Jury.*

Contributory negligence, when it depends upon questions of fact and testimony, is for the jury; but when the facts are undisputed, or indisputably established by the evidence of the plaintiff, the question becomes one of law, for the court.   (p. 240.)

Error to Circuit Court, Cabell County.

Action by J. Slaughter against the city of Huntington. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

ISBELL & PERRY, for plaintiff in error.

H. C. WARTH and SIMMS, ENSLOW, FITZPATRICK & BAKER, for defendant in error.

BRANNON, JUDGE:

J. Slaughter sued the City of Huntington to recover damages from falling while crossing a street, and the court directed a verdict for the defendant, and Slaughter has brought the case here.

The only evidence is that presented by the plaintiff. Upon this we find beyond reasonable disputation the following facts: That the plaintiff on the 26th September, 1906, was attending a conference at the church of the United Brethren in Huntington; that he was at a boarding house, and passed along 20th Street in the forenoon going to and returning from the church: the same in the afternoon, thus passing four times along the street in day light. It may be that in going to the church for the evening service he could see the condition of the street before dark. The city was paving 20th Street for a long distance. For a long distance it had been excavated and excavation was still going on. At the intersection of 20th Street and 5th Avenue this excavation extended somewhat into the avenue. There the street was plowed up and uneven. Large quantities of brick were piled along the edge of the sidewalk of 20th Street between 4th and 5th Avenues and elsewhere. The plaintiff as a witness says that he saw these piles of brick and knew they were for paving the street. He was asked whether he saw the

excavation of 20th Street, and answered, "I don't remember of seeing anything particular. If I remember right the street had been having a *going over* of some kind. I wouldn't be positive about that, and those brick were piled along there up near the *excavation* there." He was asked whether he saw any evidence that work had been done in front of the church, or that there was excavation there. His answer was, "I wouldn't venture to say whether I did or not." He said when he saw the brick there they were for paving. When asked if 20th Street was not smooth all along there, his answer was, "No, I don't think it was." He said "If it was plowed up I did not notice or don't remember it." Thus we see that the plaintiff himself knew that the street was being paved. He said it had been having a going over and that it was not smooth. He saw the excavation from his words above. The minister of the church at Huntington introduced by the plaintiff, when asked as to the condition of the street where the plaintiff fell, said: "Well, it was in pretty bad condition. It had been plowed and there were bumps, and the place where they showed me he had fallen was a high place and kind of a peak each way." Now, the plaintiff made four or five trips along this street in day light seeing, as he himself says, great piles of brick, knowing that the street was being paved, seeing its excavation, seeing its condition. He could not help seeing and knowing its condition. Where were his eyes and his common sense? He does not deny that he knew the condition of the street. From his own evidence we must say that he did know it. A man cannot say that he did not see a log or a large stone or a deep hole in a highway. Having eyes we must say that he did see them. The plaintiff cannot say that he did not know the condition of the street. Yet with knowledge that the street was in no condition for travelers to cross it, he got down from the pavement into this excavated street to the rough plowed ground, and tried to cross 20th Street, and encountered the large bump or peak and fell. This he did on a dark, rainy night, when the ground had been made slippery by the rain. This was a dangerous, risky step for a man of sixty-four years. It is argued that there were no warning or signal lights to tell the pedestrian that the work was

going on. He already knew this. Such signals are designed for those who don't know of the danger. And the absence of street and signal lights made it all the more rash for him to go down off the pavement into that dark excavated street. In *Phillips* v. *County Court*, 31 W. Va. 480, we find the Court saying, "He cannot shut his eyes against apparent dangers and drive recklessly along the highway. He is bound to keep his eyes open, and maintain a proper degree of watchfulness against danger. * * * * * * In any action against a town or county for injury received from defect in a highway, it is generally a good defence to show that the plaintiff himself is guilty of contributory negligence." In *Moore* v. *Huntington*, 31 W. Va. 849, we are told: "It is evident from the authorities that a person who uses the street or sidewalk which his observation prudently exercised would inform him was dangerous, takes the risk of such injury, as may result to him from open and apparent defect, such as his observation ought to have detected and avoided." Abbott on Munic. Corp., in section 1048, says: "As already suggested, defects may be either patent or latent. Where the defect is open and easily discovered the traveler cannot, acting upon the presumption which exists in his favor, run blindly into it. In so doing the courts hold that he will not be exercising ordinary care." In section 1051 it is stated when the defect is open a traveler must take into consideration this fact, and if he is injured "through an attempted use of a highway in a notoriously defective and dangerous condition he is chargeable with contributory negligence." Many of our cases assert this doctrine, among them *Hesser* v. *Grafton*, 33 W. Va. 348, and *Van Pelt* v. *Clarksburg*, 42 *Id.* 218.

We stated above that all this appears from the plaintiff's evidence. We find it held in *Snoddy* v. *Huntington*, 37 W. Va. 111, that, "Contributory negligence, when it depends upon questions of fact and testimony, is for the jury; but when the facts are undisputed, or indisputably established by the evidence of the plaintiff, the question becomes one of law, for the Court." In *Hesser* v. *Grafton*, *supra*, it is held that when evidence of the plaintiff proves such facts and circumstances as show that the plaintiff was guilty of contributory negligence in causing the injury, the court

should on the motion of the defendant exclude all the evidence from the jury. There can be no dispute about the evidence in this case. No evidence was given by the defendant raising a conflict. A verdict for the plaintiff could not stand on a motion for a new trial. That is the test when we come to review the action of the court in directing a verdict or striking out evidence. *Ketterman* v. *Railroad*, 48 W. Va. 606. The same rule is stated in *Louisville Railroad* v. *Woodson*, 134 U. S. 614.

There seems to be a growing disposition when ever an injury is received on a street or highway to at once sue for damages under the expectation that the tax payers will make compensation, no matter where the blame lies; that the public will guarantee a highway under all circumstances.

Another feature of this case favorable to Huntington is, that it is not a case of clear negligence like suffering a bridge to be out of repair or suffering a serious defect in a street to be long neglected. It is the case where the city has undertaken the necessary work of paving a street through blocks of its length. The law charges it with such a duty; or rather fully authorizes it to do such work. *Wilson* v. *City of Wheeling*, 19 W. Va. 323, grants to a city this privilege, saying that it might temporarily obstruct passage from a street but would not be authorized to leave the street in such a condition as necessarily to expose travelers to danger. It requires guards or beacons at night to warn passengers. A city may close a street while such repairs are going on. Thompson on Neglience, section 6017; Dillon on Munic. Corp., section 730; Smith on Munic. Corps., p. 1367. If, however, the city does not choose to close the street during the improvement it must put up beacon lights for warning at night. A city is not bound to light its streets unless statute commands it to do so. Chapter 47 of our Code enables a city to do so, but does not require it to do so. As to those beacon or signal lights, they are not designed to illuminate streets to enable the traveler to safely pass along it; they are meant only to give him warning of danger. But in this case the plaintiff knew of that danger, and the whole cast of the case tells us that if the signal lights had been present he would still have gone down into the rough

excavated street. When he had been thus warned of danger we cannot say that had there been beacon lights he would not have gone down into the street.

We therefore affirm the judgment.

*Affirmed.*