# · CHARLESTON.

### SHRIVER *v.* COUNTY COURT OF MARION COUNTY.

Submitted June 10, 1909.   Decided February 1, 1910.

1. HIGHWAYS—*Unnecessarp Passing Over Known Defect—Assumption of Risk.*

    If a traveller upon a highway, in attempting to pass over a defect therein, open and apparent and of which he had full knowledge, is thereby injured, and there was no necessity for his endeavor to pass over it, he is deemed in law to have assumed the risk incident to the attempt, and denied compensation for the injury on the ground of contributory negligence.   (p. 689).

2. SAME—*Known Defect—Care in Using.*

    That it is not negligence *per se* to use a highway, known to be in bad condition, does not imply right in a traveler to compensation for injuries, recklessly incurred, nor freedom from duty to suffer reasonable abatement of strict legal rights in respect to highways and take reasonable measures for his safety, even to the extent of some delay and effort to avoid injury.   (pp. 690-694).

3. NEGLIGENCE—*Direction of Verdict—Clear Contributory Negligence.*

    On the appearance of a clear case of contributory negligence, the trial court should take the case from the jury, upon a proper demand for such action.   (p. 693).

4. HIGHWAYS—*Unnecessary Use of Dangerous Way—Assumption of Risk.*

    A traveller, having two reasonably convenient ways for his journey, one of which is dangerous and the other not, assumes the risk of injury, if he uses the dangerous way, and cannot recovery for any injury he may thereby sustain.   (p. 691).

5. SAME—*Use of Defective Highway—Actions for Injuries—Question for Jury—Necessity for Using Defective Way.*

    If the evidence leaves it uncertain whether there was a safe and available way,, either by a public road or over adjacent private property, by which a traveller, injured by an obvious defect in a highway, could have avoided it, the necessity of assuming the risk, incident to the attempt to use it, is a question for the jury.   (p. 689).

6. SAME—*Defective Highways—Necessary Use—Care Required.*

    If the circumstances justify a traveler in assuming the risk,

incident to an attempt to use a dangerous place on a highway, he is required to exercise no more than ordinary care for his safety in doing so, and whether he exercised such care or not is generally a question for the jury. (p. 690).

Error to Circuit Court, Marion County.

Action by John H. Shriver against the County Court of Marion County. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Scott C. Lowe* and *Charles Powell,* for plaintiff in error.

*Howard N. Ogden,* for defendant in error.

POFFENBARGER, JUDGE:

A demurrer to evidence of consistent and uniform tendency, adduced by the plaintiff, in an action of trespass on the case, instituted in the circuit court of Marion county by John H. Shriver against the county court of said county, to recover damages for injury to his person and property, caused by a defect in a highway, which it was the duty of the defendant to keep in repair, was overruled and a judgment rendered for $200.00, the amount of the conditional verdict, and the only real question, raised, on the writ of error, is whether recovery is barred by the plaintiff's contributory negligence or assumption of risk.

Stating the facts, each in his own terms, the witnesses say there was a large mud hole, in said county, just outside of the City of Mannington, on a public road, called "The Pike." It was deep and troublesome, and so nearly occupied the width of the road that there was not sufficient room on either side to permit vehicles to pass around it with safety and certainty, but there was almost sufficient room for that purpose on one side of it. The hole was from two to three feet deep and partially filled with mud and water. Some of the witnesses say the surface of the water was a foot below that of the adjacent ground, and that the mud and water were deep enough to go over the front axle of an ordinary wagon. The drop of a wagon from solid ground into this hole was almost perpendicular on one side. In other words, the bank was straight

up and down. This peculiarity was due to the fact that the hole was at the end of a construction of poles or logs, known as "corduroy" work, on a portion of the road. The level space between the hole and the porch of Harden's store was about three feet, less than the width between the tires of an ordinary road wagon. From this the ground sloped to the bottom of the hole. In attempting to drive around the hole on this space, two wheels would necessarily pass along the slope, while the others would be on the higher level space. And as such an attempt involved a curve, in the case of a wagon of any length, a hind wheel would necessarily pass through a portion of the mud hole. Generally, people drove through the place. Occasionally, a short vehicle or a wagon not top heavy would pass around without upsetting. All the witnesses agree that the hole was obviously dangerous. There were other roads the plaintiff might have used to reach his destination on the occasion of the accident, but these were also dangerous. In fact, all the public roads leading in that direction had become so bad that a way, made across private lots a short time before the accident, was used, and even this seems to have led down to the mud hole, here involved. The plaintiff was a teamster, engaged in hauling and delivering merchandise generally in and about the City of Mannington, and using, in this business, a wagon of considerable length and of the class known as "undercut," the bed standing high enough above the frame of the wagon at the front end to permit passage of the front wheels under it in turning. The bed had a flaring top which extended over the wheels and was equipped with a seat and a foot board. Occupying this seat, the driver was a considerable distance from the ground and above the level of the two horses by which the wagon was drawn. Driving this wagon, well laden with merchandise for delivery, and coming to the mud hole, plaintiff stopped his team and deliberated as to whether he should attempt to drive through it or to go around it. He discussed this question with a Mr. Lang, the owner of the merchandise, who occupied the seat with him, and decided to attempt to go around it. He says he chose this course because he had observed that, in driving into it on former occasions, the foot board struck the horses on the hips, when the front wheels

66 W. Va.

dropped off of the corduroy into the hole. Lang says he attempted to drive around because of his inability to make the turn in the direction in which he wanted to go, if he drove through it. Having driven partially around, Lang says he stopped the team for a moment and made a turn, whereupon the wagon turned over, throwing them both to the ground and breaking the plaintiff's leg, injuring his wagon and destroying some of the articles he was hauling. The evidence leaves no doubt that the cause of the upsetting was the sliding of the right hind wheel into the mud hole. It is also beyond question that the plaintiff knew all about this mud hole. Having driven through it before, he knew its depth and its peculiarities in at least 'a general way. Certainly he had enough information concerning it to apprise him of its dangerous character. He had full knowledge of every material fact and circumstance, pertaining to the defect. He also knew the size and character of his wagon and the nature and weight of the load it was carrying. Besides, he was an experienced teamster, fully capable of determining whether or not the attempt he was making was dangerous.

The negligence of the county court, in permitting such a defect in its highway, is clear and undoubted. We have decisions which lay down a very liberal rule in favor of municipal corporations, exonerating them from negligence when a defect in a highway is not obviously dangerous, *Waggener* v. *Point Pleasant,* 42 W. Va. 798, *Van Pelt* v. *Clarksburg,* 42 W. Va. 218, *Yeager* v. *Bluefield,* 40 W. Va. 484; but the place, involved in this controversy, appears, from the evidence, to have been actually dangerous. Some of the witnesses say it was dangerous and all unite in a description of it which makes its dangerous character manifest. If the only question involved were that of the negligence of the county court, the judgment would be clearly right, and the action of the court, in overruling the demurrer to the evidence, entirely justifiable. We may go farther and say a contrary finding by the jury, if the evidence had been allowed to go to it, should have been set aside, if excepted to, and nothing else appeared in the case. From this it follows that contributory negligence on the part of the plaintiff is the only possible defense and, therefore, its existence

and effect the only inquiries, arising on the writ of error. This involves consideration, not only of the rights of a traveler upon a highway, but also his duty, under circumstances such as this record discloses, and the elements of contributory negligence.

A citizen has the right to use a defective highway. No law forbids it nor does it work harm or injury to the public or any individual. It is equally clear that he has the choice of all roads leading to his destination and is not bound by any law or public duty, either to confine himself to any particular road or to adopt any particular mode of use. What road he shall use and how he shall use it are determined by his own will and considerations of private convenience and necessity. It is well also to note that in addition to all the public roads, he may, under certain circumstances, rightfully pass over private property. If, in traveling upon a highway, he finds it obviously dangerous at any point, he may pass around such a place over adjacent private property and even remove fences and destroy crops in doing so, provided he does not deviate farther from the road, nor do more injury to the private premises, than is actually necessary, and no other reasonably convenient public way is available. Highways are established for the service of the public. It is for the public good that the private owner of land must yield a portion of it for such service. Ways are a public necessity, and the law guarantees to every citizen a means of travel. Hence, if the usual track of a highway is foundrous or impassable and there is no other convenient public way the traveler may go *extra viam,* that is over adjacent private land. 2 Min. Ins. 19; 2 Blk. Comm. 36; *Taylor* v. *Whitehead,* 2 Doug. 749; *Bullard* v. *Harrison,* 2 M. & S. 387; *Carrick* v. *Johnston,* 26 Up. Can. 65; *Campbell* v. *Race,* 7 Cush. 408; *Morey* v. *Fitzgerald,* 56 Vt. 487; *Williams* v. *Safford,* 7 Barb. 309; *Carey* v. *Rae,* 58 Cal. 159. In addition to this, the power of the citizen to adapt his mode of use of any passable highway to the existing circumstances is matter of common knowledge and daily observation. In many sections of the country, the roads are not suitable, at times, for the use of certain vehicles or resort to certain methods of travel, because of snow and ice or mud or roughness of the road, occasioned by frost. Under these circumstances, the traveler discontinues

the use of his carriage or his wagon and goes on horseback or
on foot or by sled.  If he ventures to use the highway in any
manner, he takes precautions and exercises care and prudence
for the safety of himself and his property which, under other
conditions, are omitted as being unnecessary.  The liberty, right
and power of the citizen, in respect to the use of highways
being very broad, it is neither unreasonable nor unjust to
require him to avail himself of his wide latitude of choice,
impose upon him the duty to exercise reasonable care and
prudence, and hold him guilty of contributory negligence when,
by reason of his omission thereof, injury results to him
or his property.  As in all other cases, arising under the law
of negligence, his voluntary and unnecessary encountering of
danger amounts to an assumption of risk and bars recovery,
if he had knowledge of the danger, or, by reason of its obvious-
ness, he was bound to know it.  This principle has been uni-
formly adhered to in the decisions of this Court.  We do not
recall an instance in which a recovery for injury, occasioned
by a known or obvious defect, has ever been allowed, and some
of our decisions go so far as to intimate that, under no circum-
stances, can there be a recovery for such an injury, if the defect
by which it is occasioned was so open and apparent, that the
traveler, exercising reasonable care and prudence for his safety,
ought to have detected and avoided it.  This Court carefully
considered the question in three cases, reported in 31st W. Va.,
*Chapman* v. *Milton,* page 384, *Phillips* v. *County Court,* page
477, and *Moore* v. *Huntington,* page 842, and stated, in the
last of these, apparently as a final and deliberate conclusion,
the following proposition:  "A person who uses the side walk
or other highway, which his observation prudently exercised
would inform him was dangerous, takes the risk of such in-
juries, as may result to him by open and apparent defects, such
as his observation ought to have detected and avoided."  The
principle, thus laid down at an early day in the jurisprudence
of the state, has been steadily adhered to.  *Hesser* v. *Grafton,*
33 W. Va. 348; *Campbell* v. *Elkins,* 58 W. Va. 308; *Slaughter*
v. *Huntington,* 64 W. Va. 237.  We are aware of no departure
from it, though there are cases which were allowed to go to the
jury for inquiry as to whether the plaintiff had, or ought to

have had, knowledge of the defect. Thus, in *Arthur* v. *Charleston,* 51 W. Va. 132, the plaintiff had fallen over a rope, stretched across the side walk, no warning of the existence of which had been given. To have held the plaintiff bound to discover it in such an unexpected place, without anything to direct attention to it, would have imposed upon him more than ordinary care. Besides, like all other general rules, this one has its rare exceptions. Thus, in *Parrish* v. *Huntington,* 57 W. Va. 286, the defence of contributory negligence was eliminated on account of the extreme youth of the plaintiff, a boy only five years old. That case is to be further distinguished on account of the peculiarity of the defect, it being such as might well have been overlooked by any traveler. The law does not impose extraordinary care. A traveler is only held to the rule of reasonable care and prudence. He is not supposed to have his eyes always fixed upon the ground in search of obscure defects. In some instances, the case ordinarily goes to the jury, for inquiry as to whether the plaintiff had knowledge of the defect or ought to have had. This review of the decisions of this Court results in the conclusion that there has been no deviation from the principle declared in *Moore* v. *Huntington,* and we are of the opinion that legal principles, reason and the weight of authority, all combine to sustain it

In the case of latent or hidden defects, not discoverable by the exercise of prudent observation, the non-application of the principle of preclusion in law, on the theory of contributory negligence, is both obvious and well settled by authority. *Moore* v. *Huntington,* 31 W. Va. 842; *Campbell* v. *Elkins,* 58 W. Va. 308. Neither does it apply when the defect, though not entirely hidden and undiscoverable, is so obscure that the traveler cannot be deemed, as a matter of law, to have had knowledge of it or to have been bound to know it existed. To this class of cases belong *Arthur* v. *Charleston* and possibly others. Under such circumstances, the inquiry is submitted to the jury for determination. We think, too, that most of the cases relied upon in the brief, filed for the defendant in error, to sustain the judgment of the court below, belong to this class, although the principle declared in some of them is broader. While those of the former class assert that a traveler upon a highway,

seeing a dangerous place in a road, and injured in the attempt to use it, may recover, provided he exercised reasonable care and prudence to avoid injury, the evidence in most of them discloses rather obscure defects causing danger, probably unknown to the traveler, or, if dangerous, so obscure in character as not to be readily discoverable, or, as in others, the facts are not stated, it may be presumed that the evidence was of that character, and in still others inability to avoid the defect was disclosed. In *Gordon* v. *Richmond,* 83 Va. 436, without stating the facts, the court held that the use of a street by a traveler, knowing it to be in bad condition, is not *per se* negligence and that he is not bound to the exercise of extraordinary care. In *Charlottsville* v. *Stratton's Admr.,* 102 Va. 95, the plaintiff's decedent had been injured on a defective street which the court says was the only practicable approach to his place of destination. This case may fall under the rule of justification of the assumption of risk by necessity. In *Railway Co.* v. *Bradford,* 100 Va. 231, the plaintiff had sustained injury in attempting to use a crossing which the street railway company had obstructed by shoveling snow on it from its track. The evidence tended to show that other persons had been traveling over the snow bank and that it was apparently safe. This may well be deemed to have raised a doubt as to whether the defect was discoverable by the exercise of prudent observation. It was not a case of baldly apparent danger. In *Bullock* v. *New York,* 99 N. Y. 654, a portion of a side walk had been removed in changing the grade of the street and pieces of flag stone had been placed at intervals for stepping stones, to keep pedestrians out of the mud. The plaintiff, in attempting to pass along the place, made a misstep and fell. The New York court of appeals held that she was entitled to recover. It may be that all the facts are not stated and the court rendered no opinion. For all that appears here, her use of that street was justified by necessity, there being no other available means of going to and from her home. In *Commissioners* v. *Burgess,* 61 Md. 29, the plaintiff had sustained injury in attempting to use a defective bridge, the defect in which consisted of a hole into which his horse fell and was injured. That case enunciates the principle, contended for in the brief for the defendant in error, saying

unless the road or bridge is practically impassable, the traveler
may use it, exercising reasonable care and prudence, and, if
injured, may recover.    This view is sustained by *Haton* v.
*Inhabitants,* 12 Cush. 492; *Tisdale's Case,* 8 Metc. 392; *Farnum*
v. *Concord,* 2 N. H. 394; and *Falsom* v. *Underhill,* 38 Vt. 581.
To this may be added *Maultby* v. *Leavenworth,* 28 Kan. 745;
*Reed* v. *Northfield,* 13 Pick 94; *Huntingdon* v. *Breen,* 77 Ia.
29; and *Murphy* v. *Indianapolis,* 83 Ind. 76.    These cases ap-
parently ignore the insurmountable obstacle to recovery, raised
by the assumption of risk, an element recognized and given
effect in every action for negligence, when the evidence clearly
discloses it, unless it is justified on some ground of necessity.
The principle is not noticed in any of these decisions and may
have escaped the attention of the court, by reason of its not
having been invoked by the defendants.    It has been applied
in many well considered decisions involving cases of this kind.
*Wellman* v. *Burrough of Susquehanna Depot,* 167 Pa. 239;
*Smith* v. *Newcastle,* 178 Pa. 298; *Chilton* v. *Carbondale,* 160
Pa. 463; *Cosner* v. *Centerville,* 90 Ia. 33; *Clayton* v. *Brooks,*
150 Ill. 97; *Carstesen* v. *Bradford,* 67 Conn. 428; *Cook & Coker*
v. *Atlanta,* 94 Ga. 613.    In some of these cases, the plaintiff
was held guilty of contributory negligence on the theory of
having assumed risk as a matter of law and non-suits were
ordered.    In others, the question of contributory negligence
was submitted to the jury.    The practice in the courts of the
different jurisdictions varies in respect to the provinces of the
court and jury, in dealing with evidence of such negligence,
some of them holding that the question is always for the jury
and never for the court.    The practice in this state is contrary
to this view.    When a clear case of contributory negligence is
disclosed by the evidence, the court takes the case from the
jury, upon a proper application for such action, such as a
motion to exclude the evidence, a motion to direct a verdict
for the defendant or a demurrer to the evidence.    *Phillips* v.
*County Court,* 31 W. Va. 477; *Foley* v. *Huntington,*
51 W. Va. 396; *Snodday* v. *Huntington,* 37 W. Va.
111; *Graham* v. *Coke Co.,* 38 W. Va. 273; *Woodell* v. *Improve-
ment Co.,* 38 W. Va. 23; *Hanley* v. *Huntington,* 37 W. Va. 578;
*Childrey* v. *Huntington,* 34 W. Va. 457; *Slaughter* v. *Hunting-*

*ton,* 64 W. Va. 237. This difference in practice may account for apparent, not real, contrariety in some of the decisions. Another principle, asserted by the courts generally, though correct, has a tendency to mislead. It is that the use of a road by a traveler, with knowledge of its bad condition, is not *per se* negligence. On its face, this principle seems to be inconsistent with preclusion from recovery by assumption of risk. It seems necessarily to imply a right to use, in a careful manner, a bad road and recover in case of injury, but this is not necessarily true. Rightly interpreted, the expression means no more than that the citizen may use such a road with knowledge of its condition and still recover for injury, if the circumstances were such as to justify the assumption of risk, on the ground of necessity, and he exercised care, and also when the injury was caused, not by the open and apparent defects of which the plaintiff had knowledge, but by another latent, hidden defect in the same street or walk of which he had no knowledge, as in the case of *Moore* v. *Huntington.* Although in that case there were patent defects, the injury did not result from them, but did result from an unknown defect. The latter being the proximate cause of the injury, the court held that the plaintiff was not precluded from recovery by his knowledge of the other defects which did not cause the injury, and accordingly observed that the use of a street or side-walk, known to be defective, is not *per se* negligence. Other instances in which a like ruling would be made are easily conceivable, as a mud hole in a road, apparently nothing more than an ordinary defect, but, in reality, the cover of a bed of quicksand, or a hole of sufficient depth to swallow up horse and rider or vehicle and team.

We think the authorities and principles, adverted to, abundantly sustain the view that knowledge of a defect imposes upon the traveler the duty to adopt reasonable measures for his protection, when practicable, such as deviation from his course, variation of his manner of travel or use, and reasonable precautions against injury when the circumstances afford him no alternative. Though the public owes him the duty of providing safe and convenient highways, lack of them does not justify recklessness on his part or disregard of his own safety and that of his property. Well settled general principles of law, uni-

versally observed in negligence cases, condemn such conduct. He must seek redress in some other way, and, if there be none, he is without remedy. To avoid conflict with these principles, he must suffer reasonable abatement of his strict legal rights and make slight sacrifices, when a public highway is the subject matter of that right, as well as when other things constitute its subject matter. We are not called upon here to define the exact limits of forbearance and sacrifice thus imposed, and do not attempt to do so, but it may well be doubted, whether a traveler can assume the risk of a known danger or go *extra viam,* if the obstruction or defect in the highway is temporary and susceptible of remedy by himself, without any serious delay or unreasonable effort. *Morey* v. *Fitsgerald,* 56 Vt. 487; Elliott on Roads, section 14.

It will be our duty, under these principles, to affirm the judgment, unless the evidence makes it reasonably certain that there was a safe way by which the plaintiff could have reached his destination, without coming in contact with the mud hole in question, and without serious delay, and, further, that, if there was not such a way, he attempted to drive around the defect in a negligent manner. On the subject of a safe way by some other road, the evidence is in great confusion. The plaintiff and some other witnesses mention a way partly public and partly over private lots as being passable and safe, but they leave it wholly uncertain whether the mud hole could be avoided by using it. That way seems to come to the pike at Harden's store where the defect was, the only advantage being avoidance of contact with part of the hole. The part that would be thus crossed may not have been as dangerous as the other, the end next to the corduroy, but the evidence does not say so. We are of the opinion, therefore, that it was for the jury to say whether the plaintiff unnecessarily assumed the risk incident to his attempt to go by way of the pike. Then it logically follows that it was the province of the jury to say whether, having the right to assume the risk, he drove carefully and prudently. His failure to get off the wagon, when attempting the difficult feat which resulted in his injury, is relied upon as an undisputed act of negligence, but we think that was a question for the jury, as it pertains to the manner of using the defective portion of

the road, rather than the right to use it. In other words, having the right to assume the risk, because there was no other safe way, it was incumbent upon the plaintiff to exercise ordinary care in using the defective portion of road. Proof that he had previously driven around the mud hole without injury, as he was attempting to do, when hurt, made this also a jury question.

These conclusions result in an affirmance of the judgment.

*Affirmed.*