## CHARLESTON.

ROBERTS *v.* BALTIMORE & OHIO RAILROAD COMPANY.

Submitted June 13, 1912.   Decided April 29, 1913.

1. JUSTICES OF THE PEACE—*Appeal—Continuance.*

   An amended complaint filed in the circuit court, after the jury has been selected and sworn, in an appeal from a judgment of a justice, setting forth more particularly and formally the claims or demands described in the complaint filed in the justice's court, and introducing no new cause of action, does not of itself show cause for a continuance.   (p. 372).

2. NEGLIGENCE—*Contributory Negligence—Emergencies—Question for Jury.*

   In cases of sudden and unexpected danger, necessitating quick determination and choice of means of safety or escape, the law makes allowance for errors in judgment, exacting only good faith and abstention from voluntary risk on the part of the person so exposed, and the inquiry as to whether injury resulting to him from mischoice of means was due to his contributory negligence is generally one for jury determination. (p. 373).

3. RAILROADS—*Crossing Accident—Contributory Negligence—Question for Jury.*

   In the absence of proof of knowledge, on the part of a driver of a vehicle, of the character and extent of a defect in a highway crossing on a railroad, by means of which a vehicle, while being driven across the track in the night time, caught and became fastened upon a rail of the track and could not be detached and removed in time to prevent it from being struck by an engine, it is for the jury to say whether the driver was guilty of contributory negligence in attempting to effect a crossing, in view of the character of the vehicle and the defect in the crossing.   (p. 373).

4. TRIAL—*Crossing Accident—Instruction.*

   An instruction in such a case, authorizing the jury to find for the plaintiff, if they believe from the evidence that the

crossing was out of repair and in an unsafe condition and the defect therein was the proximate cause of the injury, aided by other instructions given for the defendant, propounding an inquiry as to the existence of contributory negligence and clearly stating what is meant by proximate cause, may properly be given in an action for damages for injury sustained in such manner.   (p. 375).

5.   RAILROADS—*Crossing Accident—Instruction.*

An instruction in such case authorizing a verdict for the plaintiff, if the jury believe the servants of the defendant in charge of its engine, by the exercise of ordinary care, could have discovered the vehicle and avoided injury thereto, is proper, although binding and the evidence upon which it is based circumstantial, consisting of the facts and circumstances attendant upon the injury.   As the act of negligence to which such an instruction relates, if established, is necessarily the last one of the transaction and therefore the proximate cause of the injury, the instruction need not cover other phases of the case.   (p. 376).

Error to Circuit Court, Wetzel County.

Action by John Roberts against the Baltimore & Ohio Railroad Company, a corporation.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Thomas P. Jacobs* and *F. V. Iams,* for plaintiff in error.

*John F. Throckmorton* and *E. L. Robinson,* for defendant in error.

POFFENBARGER, PRESIDENT:

On appeal from a judgment of a justice, the plaintiff recovered a verdict and judgment for damages for the alleged negligent destruction of his hay baler and injury to other property, on a highway crossing over the defendant's railroad.   The crossing being out of repair, the baler caught on one of the rails of the track, as it was being driven across the same, and, before it could be detached, one of the defendant's engines struck it and destroyed it together with some other property connected with or attached to it, and injured and damaged the plaintiff's horses and harness.

The filing of an amended declaration after the jury had been impaneled and sworn, was the occasion of a motion for a continuance, the overruling of which is the ground of one of the assignments of error. A complaint, called a declaration, setting forth the nature of the plaintiff's claim and an account, containing an itemization thereof, were filed with the justice. The amended declaration or complaint amounts to nothing more than a restatement, with more particularity and formality, of the claim filed with the justice. It introduced no new ground of action. The declaration or complaint filed with the justice called the machine a hay press and the amended declaration designates it a hay baler, but this difference in name is not suggestive of a new subject matter, hay press and hay baler obviously meaning the same thing. An amendment to a pleading, made at the bar, does not of itself confer right to a continuance. The cause therefor must appear from the nature of the amendment or be shown in some other way. *Koen* v. *Brewing Co.*, 69 W. Va. 94; *Bank* v. *Hamilton*, 43 W. Va. 75; *Anderson* v. *Coal Co.*, 12 W. Va. 526.

The baler was a portable machine, carried on two trucks or axles, connected by a reach or coupling pole. The wheels were much lower than those of an ordinary wagon. In the reach or coupling pole were two pins or bolts, extending slightly below it, and distant from the front axle, respectively, about two feet and ten inches and four feet and five inches. The plaintiff's agent or servant attempted to cross the track from north to south. From the south rail of the track, there was a considerable drop, by reason of the earth having been worn away or the track having been built above the surface of the road, or both. As to the depth of this depression, there is some conflict in the evidence, but none as to its existence. At the crossing there is a switch or side track as well as the main track, and the evidence tends to show a depression between the tracks. As to whether there was a board or plank on the ends of the ties outside of the south rail of the main track, there is some conflict, but there is evidence tending to prove there was none. When the front wheels of the baler went over the south rail of the main track into the depression, the first bolt or pin in the reach caught on the rail. By means of a jack, it was detached, and then the other one caught, and, pending the efforts of the teamster and the boy who was with him to detach it, the engine came upon them and struck the

baler.   The collision occurred in the evening a little after dark.
The crossing is either in a curve or very close to it.   The head-
light of the engine would not, for this reason, reveal the baler's
presence at a distance of more than fifteen or twenty feet, and
the engine was running at a rather high rate of speed, twenty
or twenty-five miles an hour.   The engine crew and another wit-
ness say the crossing signals were given.   There was no light on
the baler, nor did the teamster or boy endeavor to give any signal
to the approaching engine or in any way disclose their presence
upon the track.   When the teamster came to the track, train No.
4, going east, was just about due, and he waited until it passed.
Train No. 55, going west, was due at the crossing only a few min-
utes later.   All this he knew, but started to cross in this short
interval of time, assuming his ability to do so without mishap.
The baler was struck by a loose engine, a helper, going west, ahead
of train No. 55.   It was an extra not scheduled, and, for all that
appears, the baler might have been detached before the arrival
of train No. 55.

As railroad companies, in making and maintaining public
crossings over their tracks, assume and discharge, in obedience
to the statute, the duty ordinarily imposed by law upon county
courts respecting highways, and provide and maintain them for
the same purposes for which county courts construct and maintain
highways, the due performance of that duty is tested by the rules
and principles applicable to county courts, respecting perform-
ance of their duties relating to highways; and the duty of a trav-
eler over such a crossing is the same as that pertaining to his use
of other portions of a highway.   Hence, what would amount to
contributory negligence on the part of a traveler on any other
portion of the highway would constitute contributory negligence
in his use of a crossing, and, if injury in either case is caused
by such negligence, there is no right of recovery.   This defense
is relied upon here in resistance of the rulings of the trial court
upon instructions and also upon the motion to set aside the
verdict.   Hence, the inquiry is a very material and important
one.   If the plaintiff's agent, knowing the character and extent
of the defect and danger, deliberately assumed the risk or hazard,
incident to the attempt to cross, his act was binding upon his em-
ployer.   Under principles declared in *Shriver* v. *County Court,*
66 W. Va. 685; *Phillips* v. *County Court,* 31 W. Va. 447; *Moore*

v. *Huntington,* 31 W. Va. 842; *Hesser* v. *Grafton,* 33 W. Va.
348; *Campbell* v. *Elkins,* 58 W. Va. 308; and *Slaughter* v. *Hun-
tington,* 64 W. Va. 237, there can be no recovery, if the danger
was obvious and the risk assumed. It was not negligence in the
plaintiff to send the vehicle upon the public road because of its
peculiar character or construction, but, in attempting to use de-
fective portions of the road, he was bound to take into considera-
tion the character of the vehicle. He selected it for such use
and knew its character. If the depression was known to the
driver to be as deep as some of the witnesses say it was, he must
have known the attempt to pass over it with the baler was haz-
ardous, but his knowledge of the exact depth and character of the
depression is not shown, and, owing to the lateness of the hour
and darkness, he may not have observed its depth. Knowing
nothing to the contrary, he could presume the crossing was rea-
sonably safe. *Daniel* v. *County Court,* 69 W. Va. 676. It was
manifestly not negligence in the driver to attempt to pass over
the track immediately after a train had gone by, in the absence of
proof of the obvious approach of another or a signal indicating its
approach. With his vehicle thus fastened on the track and un-
able to go forward, there was a duty upon the driver, if practi-
cable, to protect himself from approaching trains by keeping a
lookout and warning them of his presence, unless he had reason
to believe his detention would not be of sufficient duration to pre-
vent him from getting off the track after hearing train signals
for the crossing. In this connection, he was entitled to take into
consideration the implements he had for effecting a detachment
of the machine from the rail. He had a jack suitable
and convenient for such purpose. By its use he relieved himself
from the first impediment and was endeavoring to get relief from
the second by the same means when the collision occurred. These
circumstances indicate lack of reason for belief that he would be
detained for any considerable length of time. His embarrass-
ment, according to his own testimony, occurred unexpectedly,
and he had little time in which to determine his course of pro-
cedure. It was dark and he had no light with which to give a
signal. He may have thought the danger would have been in-
creased rather than minimized by the consumption of time requi-
site to the procurement of a light with which to give signals.
Under these circumstances, the question of contributory negli-

gence was one for jury determination. In cases of sudden emergency, the law makes allowance for errors in judgment. The test is good faith and abstention from voluntary risk. *Mannon* v. *Railway Co.,* 56 W. Va. 554. Hence, the verdict cannot be disturbed, unless the court erred in some of its rulings in the course of the trial.

At the instance of the defendant, the jury were fully instructed as to the duty of travelers upon highways to exercise care for their own safety, the effect of contributory negligence as a bar to recovery and the duty of the plaintiff's servant, when he found himself detained on the track, to use diligence, if practicable, to give such notice to approaching trains of his presence there by signal or otherwise as ordinary prudence required under the circumstances. An instruction upon the law of concurrent negligence and another upon the duty of the plaintiff's agent to give notice of his presence upon the track by signals to approaching trains were refused. As the defense of contributory negligence had been clearly brought to the attention of the jury, the subject matter of the instruction on concurrent negligence was sufficiently covered by those given. The jury were told the plaintiff could not recover if his negligence in any degree contributed to the injury. Defendant's other proposed instruction, refused by the court, omitted the element of judgment as to the necessity of giving signals under the circumstances. This omission justified refusal thereof. It was a binding instruction, omitting any reference to one of the issues fairly presented by the evidence. Plaintiff's instruction No. 1 merely asserted the duty of the defendant to keep the crossings over its tracks in repair and in a reasonably safe condition for wagons and other vehicles. His instruction No. 2 authorized the jury to find for the plaintiff, if they believed the defendant had failed and neglected to keep the crossing in question in repair and reasonably safe and its failure to do so was the proximate cause of the injury. It is said these instructions wrongfully impose duty to keep the approaches to the crossing in repair, though beyond the right of way of the defendant. There is no evidence that the depression in question was beyond the right of way of the defendant. Though instruction No. 2, binding as it is, says nothing about the issue of contributory negligence in terms, it re-

quires the jury to find the negligence of the defendant was the proximate cause of the injury. The meaning of proximate cause is clearly shown in instruction No. 3, given at the instance of the defendant, though not formally defined. Had it not been thus disclosed, plaintiff's instruction No. 2 might have been misleading because of its generality. It inserts two conditions, telling the jury they must find the defendant was negligent and that its negligence proximately caused the injury, before they could find for the plaintiff. In other words, instruction No. 2 is sound and complete, covering the whole case in general terms, some of which are defined in other instructions. Thus read, it does not ignore contributory negligence as a defense. Plaintiff's instruction No. 3, likewise binding, authorized a verdict for the plaintiff, if the jury should believe the defendant's servants, by the exercise of ordinary care, could have discovered the baler on the track and avoided injury thereof. There was no direct or positive evidence that the engine crew could have discovered the obstruction on the track, if they had been keeping a lookout for it, in time to prevent the injury, but the circumstances may be regarded as evidence proper for jury consideration upon that question. It was early in the evening, just after dark, and the engine, pulling no train, could have been stopped in a much shorter distance than if it had been drawing one, and the curve in the road at that point is not definitely given. Of course it is error to give an instruction for which there is no basis in the evidence at all, but slight evidence only is required for such purpose. This instruction propounded an inquiry as to an act of negligence which, if established, was necessarily the last one in the transaction and, therefore, the proximate cause of the injury. For this reason, it could properly be made binding, though it did not cover all the issues in the case. Considered as a whole, the instructions fairly presented to the jury all the issues developed by the evidence.

These conclusions result in affirmance of the judgment.

*Affirmed.*