# CHARLESTON.

## H. H. FISHER v. FLANAGAN COAL COMPANY.

Submitted April 20, 1920.   Decided May 11, 1920.

1.  HIGHWAYS—*On Issue Collaterally Involving Existence of a Highway, Possession by Public Authorities is Prima Facie Title and Suffices.*

    Upon the trial of an issue in which the existence of a highway is only collaterally involved, possession of the right of way by the public authorities, through their officers, servants or agents, constitutes *prima facie* right and title thereto, and suffices for the purposes of the litigation; and it is unnecessary to prove absolute title or *de jure* right.  (p. 463).

2.  ELECTRICITY—*In ·Action by Citizen Against Corporation for Personal Injury While Using Highway, Whether Such Use Was Authorized by Defendant is Immaterial.*

    If, in such case, the litigation is between a citizen using the road as a highway and another by whose alleged negligence he has been injured, while so using it, it is immaterial whether or not such use was authorized by the corporation claiming ownership of the road, the wrongful use, if any, being *res inter alios acta.*  (p. 463).

3.  SAME—*Corporation Maintaining Heavily Charged Electric Wire Across Road Under Construction Must Take Reasonable Precaution Against Injury Therefrom to Travelers Thereover.*

    A person maintaining a heavily charged electric wire across such a road, while in course of construction and nearing completion, may be held, as matter of fact determinable by the jury, to have been bound to anticipate probability of public travel on it, before formal opening thereof to public use, and to take reasonable precaution against injury to travelers thereon, by accidental contact with such wire.  (p. 464).

4.  TRIAL—*Instruction on Contributory Negligence Ignoring Portion of Evidence Properly Refused.*

    . Although the evidence in a case may justify an instruction propounding the theory of contributory negligence, it is not error to refuse one so drawn as to ignore practically all of the evidence tending to prove such negligence and make it stand upon a basis unsupported by evidence.  (p. 464).

5   Evidence—*Admission of Expert Testimony on Matter as to Which He Disclaimed Qualifications is Error.*

Admission over objection, of an opinion of a witness examined as an expert, upon a matter as to which he disclaims qualification to express an opinion, is erroneous.  (p. 466).

6.   Appeal and Error—*Erroneous Admission of Expert Opinion Bearing on Damages Where Court Cannot Clearly See That Verdict is not Excessive, Reversible Error.*

If such an opinion so admitted bears upon the quantum of damages and the evidence pertaining to it is not so clear and conclusive as to enable the court clearly to see that the verdict is not excessive, the error is deemed to have been prejudicial and is cause for reversal of the judgment.  (p. 466).

7.   Same—*Objection to Question Eliciting Improper Evidence and Exception to the Overruling Thereon Lays a Proper Foundation for an Assignment of Error to its Admission.*

A proper foundation is laid for an assigment of error, as to admission of improper evidence, by an objection to the question eliciting the evidence and an exception to the overruling of the objection.  To make the error available, it is not necessary to move to strike out the answer and except to the overruling of the motion to strike it out.  (p. 466).

(Lynch, Judge, absent).

Error to Circuit Court, McDowell County.

Action by H. H. Fisher against the Flanagan Coal Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*E. C. Marshall,* for plaintiff in error.

*Sale & Tucker,* for defendant in error.

Poffenbarger, Judge:

The principal questions raised on this writ of error to a judgment rendered in an action for damages for a personal injury occasioned by an electric wire maintained by the defendant across a road in process of construction by the County Court of McDowell County, pertain to the status of the road, the plaintiff's right to use it and his conduct with reference to the wire, in view of his knowledge of its existence and location.

There is no proof that the right of way for the road which passed through land the defendant had under lease for coal min-

ing purposes, had been acquired from the owner of the land or that the lessee had expressly assented to the appropriation thereof. Whether the new road was to be a substitute for the old one running in the bed of a creek is not clearly shown, but that seems to have been one purpose of its construction. It had been roughly graded for some time before the accident occurred. In the month of its occurrence, the county court was prosecuting the work of smoothing it up, filling depressions, removing humps and crowning the surface. While this work was in progress, a washout rendered the old road impassible or very inconvenient for use, and the general public, according to the evidence adduced by the plaintiff, resorted to the new road. He says the old one had been washed out for about a month. Both he and another witness say the new road was used at the time of the injury, by pedestrians, horsemen and vehicles including automobiles. Such use of it at that time is denied by witnesses for the defendant, but the jury's affirmative finding on the issue is sufficiently sustained by evidence to preclude disturbance thereof by the court. There is no proof of any formal opening of the road to public use, by the county authorities, however, and one of the county engineers testified that it had not been opened to public use, nor the old road closed.

The wire inflicting the injury ran from the Appalachian Power Company's line across the road to some buildings owned by the defendant. It had been maintained across the road from the beginning of the construction work, antedating the accident about two years. The steam shovel used in grading and men and teams had safely passed under it. Beneath it, there had been a depression in the road, which shortly before the accident, had been filled so as to bring the surface nearer to the wire. A day or two before the accident, the relation of the road to the wire had been so altered by the filling, that a workman on the road had put a pole under the wire and so raised it. Prior to the filling, passage under the wire was safe, but not afterwards. On the morning of the accident, the pole put up by the workman was down and the wire too close to the surface for safety. A witness says it had been as low for two days as it was at the time of the injury. He also says that, but for the filling, the wire would have been high enough for safety. For

some days, the plaintiff had traveled on the new road, in going to and returning from his work, and had observed the wire, but did not know it was heavily charged with electricity. He says he thought it was a telephone wire. On this occasion, he was riding a mule, and he thus details the accident: "I * * * got right at the wire before I thought about it, and I thought it was a phone wire, and I didn't dodge low enough, and it knocked me back off the mule, throwed me right backwards on the rocks. * * * I didn't think about it until I got right at it." His fall broke no bones nor caused any dislocations, but it cut his head and severely bruised a shoulder, the right arm and back and caused a sprain of an ankle. He claims also that his hearing and sight are not as good as they had been before the injury.

Neither absolute title in the county court, to the right of way on which it was causing work to be done, nor perfect right in the public to use the new road is an essential condition of liability on the part of the defendant. A *de facto* occupation of the land by the county court clearly suffices. It would, if the action were against the county court instead of the coal company. The title of the county court would be only collaterally involved, and, in such case, an apparent or *prima facie* right suffices. *Campbell* v. *Elkins,* 58 W. Va., 308. If the question were one of ultimate and final right, proof of it would be governed by a different rule. *Morlang* v. *City of Parkersburg,* 84 W. Va., 508, 100 S. E. 394. The right of occupation is only collaterally involved here, wherefore only *prima facie* right need be shown. After an acquiescence in the appropriation of the property to public use, for a period of at least two years, with knowledge of large expenditures on the part of the appropriator, under belief in its right, the defendant cannot be heard to deny *prima facie* right in the county court.

From this conclusion, it necessarily follows, that the public had prima facie right to use the road in process of construction as a highway, even though it had not been formally opened to public travel. Such use was under a prima facie right of the county court, and, for that reason, the plaintiff could not have been a trespasser against, nor a licensee of, the defendant. If the public use was premature and unauthorized, the wrong done

by the plaintiff and others, in the use, was against the county court, not the defendant, wherefore the latter can neither complain of it nor justify any neglect on its part, upon it. Ordinarily, an estoppel by a wrongful act operates only in favor of the injured party. What occurred between the public and the county court is *res inter alios acta*, and therefore immaterial. But the action of the county court and the public established a status of which the defendant was bound to take notice, in its conduct in the premises, if it had knowledge of such status.

Occupation of the strip of land for road purposes was admittedly known, but knowledge of use of it by the public as a way of travel is denied. There is sufficient evidence to justify a finding of such use, as has been stated. By his own admission, it is shown that the superintendent of the defendant used part of the road twice a day; that its employees used part of it; and that the superintendent had ridden under the wire. As the defendant's houses occupied by the miners, constituting a small village, stood near the road, and its managers and employees had occasion to use a portion of it, such general use as witnesses for the plaintiff describe was probably known. But, if the jury could not so find, in view of the denial of knowledge, the road was nevertheless a public place. It was occupied by the public authorities and was manifestly susceptible of general public use. It was no longer under private control and the defendant may well be deemed to have known that people preferring to travel it, instead of the old road, for one reason or another, would occasionally, if not generally, resort to it for travel. Knowledge of such probability or possibility amply suffices, under the authorities, to impose duty upon it to take precaution against injury to them by contact with the electric wire it maintained across the road. *Thornburg* v. *City and Elm Grove R. Co.,* 65 W. Va. 379; *Snyder* v. *Wheeling Electrical Co.,* 54 W. Va. 395; *Love* v. *Virginia Power Co.,* decided at this term and not officially reported.

The defendant is not absolved from liability by the fact that the road immediately under the wire was raised, without notice, to such an extent as to make the situation dangerous to a person riding horse-back. It knew the work of alteration of the surface of the road was in progress and, presumptively, that

the depression below the wire would be filled to some extent. In the handling of an agency of such secret and deadly nature, it was bound to anticipate such events and results as a prudent person advised of the character of the agency might reasonably be deemed to have foreseen. And, whether the result was of such nature, is generally a question for jury determination. *Walker* v. *Strosnider,* 67 W. Va. 39.

These principles and conclusions justify the trial court's refusal of instructions Nos. 6 and 7, requested by the defendant. Virtually, they would have advised the jury that the defendant was under no duty to take precautions for the safety of the place over which the wire passed, but was under duty to the plaintiff, only in the event the jury should find the defendant had knowledge of the danger to him.

Assignments of error predicated on the refusal of a peremptory instruction to find for the defendant, and the over-ruling of the motion for a new trial, assume preclusion of right of recovery by contributory negligence on the part of the plaintiff. They are not well taken. Though the plaintiff had knowledge of the wire and thought it was a telephone wire, his testimony, if true, shows he came into contact with it by accident, and persons handling electricity are negligent if they do not take precaution against probable injury to others by accidental contact with an exposed wire or appliance carrying it. It is not to be supposed that a traveler on a road will constantly bear in mind an overhead wire or other menace. If the plaintiff, for the occasion, forgot it, or was deceived as to its position by the change in the grade of the road, or the lowering of the wire by removal of a pole, as the jury could find from the evidence, and suddenly and unexpectedly encountered it, he is not held to a strict accountability as to the course he pursued after discovery. Occasions of sudden emergency resulting from negligence are exceptional. *Harrison Engineering and Equipment Co.* v. *McAdoo, Director General,* decided at this term and not yet officially reported; *Bond* v. *B. & O. R. Co.,* 82 W. Va. 557; *Roberts* v. *B. & O. R. Co,* 72 W Va. 370.

Defendant's instruction No. 2, designed to propound to the jury an inquiry as to whether the plaintiff had been guilty of contributory negligence, was refused and the ruling excepted to.

No doubt a proper instruction on that subject would have been given. Plaintiff knew the location of the wire, and, though he says he thought it was only a telephone wire, the truth of that statement, in view of his probable knowledge of the situation and surrounding circumstances, may have been a question for the jury. Lack of knowledge on his part, of the location of the high power lines from which this wire came and of the locations of the telephone systems of the neighborhood, is improbable. But the instruction requested was too narrow. It was confined and limited to the plaintiff's testimony and would have told the jury to find against him, if he saw it in time to avoid coming in contact with it, by the exercise of ordinary care. Leaving out his previous knowledge of it, as the instruction did, there was nothing on which to base the theory of contributory negligence, for he said, in effect, that he did not see it in time to avoid injury, and there was no other evidence as to that. Given in the form in which it was requested, it would have been misleading.

Over an objection interposed by the defendant, the court permitted an hypothetical question to be propounded to the physician who had examined and treated the plaintiff, for elicitation of an opinion as to whether the electric shock caused injury or impairment of his sight and hearing, with a view to augmentation of the damages, in case of recovery. There was evidence that, at some time before the injury, the wire had knocked a horse down. The question assumed that this incident happened the day before the occurrence involved here. It also assumed, without direct evidence, that the wire had struck the plaintiff on the forehead. He did not say what part of his body came in contact with it, but it might be inferred from what he said, that it was some part of his head. Though the witness denied his qualification to give an expert opinion on the subject, he was urged to answer the question and said he thought such a shock might cause such an injury. There was a positive objection to the question and an exception to the overruling thereof. Before it was answered, the witness disclaimed qualification to answer it. As the objection still stood, the court should have then sustained it, if the witness' disclaimer disqualified him, even though the question had been properly framed. There

was no objection ·to the answer nor any motion to strike it out, but it would be exceedingly technical to require double objections and exceptions to the introduction° of improper evidence. It seems to be sufficient to object to a question propounded, seeking inadmissible evidence, and except to the overruling of the objection, but the answer must be disclosed. *Kay* v. *Glade etc. R. Co.,* 47 W. Va. 467; *Johnson* v. *Jennings,* 10 Gratt 1; *Beirne* v. *Rosser,* 26 Gratt 537, 547. It is very generally held that repetition or renewal of an objection to evidence is unnecessary and, in some instances, improper. 3 C. J. 823, citing numerous cases. Physicians are not, as matter of law qualified to give opinions, as an expert, upon all medical questions. There are many instances in which their testimony has been rejected. A general practitioner has been held not to be qualified as an expert quoad questions pertaining to a branch of medical science to which he had given no study and concerning which he had had neither observation nor experience. Rogers, Expert Testimony, p. 103; *Russell* v. *State,* 53 Miss. 367; *Emerson* v. *Gas Light Co.,* 8 Allen (Mass.) 146. Disclaimer of qualification to testify on the subject of the interrogation, by the witness himself, manifestly rendered his testimony inadmissible. It is obviously unnecessary to inquire whether the question was properly framed.

What he said may not have had much weight with the jury. But the verdict is for a considerable amount, $5,000.00, and the plaintiff's injuries were comparatively slight, unless his sight and hearing were impaired. A charge of excessiveness is made against it. On the issue as to the quantum of damages, the defendant was entitled to have the case go to the jury without the embarrassment of inadmissible evidence. We are unable to say either that this evidence was not allowed weight in fixing the amount of the damages, or that the amount would have been the same, if it had been excluded. Presumptively, it was prejudicial and injurious: *Lay* v. *Elk Ridge Coal Co.,* 64 W. Va. 288; *Ward* v. *Brown,* 53 W. Va. 227. Under such circumstances, it is our practice to reverse the judgment, set aside the verdict and award a new trial, and such will be the effect of the order to be entered.

*Reversed and Remanded.*